Commonwealth *v.* Osborne, Appellant.

298

Argued November 15, 1968. Before Bell, C. J., Jones, Cohen, Eagen, O'Brien and Roberts, JJ.

*Jerome M. Dubyn,* with him *M. Mark Mendel,* for appellant.

*James D. Crawford,* Assistant District Attorney, with him *Edward G. Rendell,* Assistant District Attorney, *Richard A. Sprague,* First Assistant District Attorney, and *Arlen Specter,* District Attorney, for Commonwealth, appellee.

OPINION BY MR. JUSTICE ROBERTS, January 15, 1969:

This is a direct appeal from a second degree murder conviction and sentence thereon for which appellant is currently serving a five to fifteen year imprisonment. Appellant presents several alleged errors in the proceedings below, any one of which he contends would justify the grant of a new trial. We shall discuss and decide each of these seriatim.

First, appellant alleges that the failure of the Commonwealth to produce the bullet which inflicted the fatal wound and a second bullet which wounded witness Stephen Caldwell should render his conviction invalid as a violation of due process. It is not clear whether appellant is arguing that (1) without the bullets there was insufficient evidence to obtain a guilty verdict or (2) the suppression of the bullets was an impermissible act on the part of the district attorney. In either case we think the argument is without merit.

There was a great deal of independent testimony in the record to prove that appellant had fired a gun. Both Thomas Tillison, Jr. (brother of decedent) and Stephen Caldwell testified that they saw appellant shoot the pistol appellant had removed from the hand of the "tall man" (the latter being an individual at the scene of the crime who apparently was never identified and did not testify). Further, no evidence was ever introduced concerning any additional firearms. Thus it would appear that despite the failure to introduce the various bullets, the Commonwealth had introduced sufficient evidence to sustain a conviction.

For the second proposition, the appellant urges that this case presents the same situation as that condemned by the Third Circuit in *United States ex rel. Almeida v. Baldi*, 195 F. 2d 815 (3d Cir. 1952). In *Almeida*, the court held that the complete suppression by the district attorney of the fatal bullet when he knew it would have proven that this bullet was not fired from defendant's gun amounted to a violation of the due process clause of the fourteenth amendment. However, the instant case is clearly distinguishable on its facts. Here, appellant's attorney was aware that the district attorney had the murder bullet. He also was aware that another bullet had been fired at the scene of the crime. In fact, trial counsel, during his argument for a directed verdict, pointed out the failure to produce the bullets. All that was required for him to obtain them was a formal call for the production of such bullet or bullets at trial. Unlike the trial counsel in *Almeida*, appellant's trial counsel knew of the existence of the bullets and knew what to ask for. Under these circumstances it cannot be said that the district attorney deliberately suppressed the bullets simply because he failed to introduce them.

Appellant's second allegation involves a charge that the Commonwealth's two key witnesses' testimony con-

stitutes perjury and the use of such evidence by the prosecuting official violated appellant's constitutional rights. Before analyzing the specific variations and inconsistencies in testimony which appellant contends rise to the level of perjury, it is wise to repeat what this Court has said in relation to this type of claim. "A mere variance in testimony, or even the fact that a witness may have made contradictory statements, goes to the question of the credibility of the witness but does not, in itself, indicate perjury on the part of the witness, or that the defendant was convicted on perjured testimony, and is not, of itself, sufficient to compel a new trial. . . ." However, where the testimony is so contradictory and fantastic as to be incredible, the Court has a right to grant a new trial. *Commonwealth ex rel. Rook v. Myers,* 402 Pa. 202, 167 A. 2d 274, 276 (1961).

First, appellant points to Thomas Tillison's testimony that the fatal shot was fired from two feet, yet there were no powder burns on decedent's shirt. This was described as scientifically plausible by Dr. Spellman who explicitly testified that the evidence surrounding the bullet hole was entirely consistent with a shot from two feet away. Second, it is urged that because Tillison and Caldwell contradicted each other on the distances from which appellant fired at decedent neither is credible. However, it is clear that more than one shot was fired. Most likely, the two were testifying about different shots when one said the shot came from two feet away while the other suggested the distance of fifty-four feet. There was testimony that Caldwell ducked and therefore was unable to see the second shot which Tillison stated came from close range. Third, appellant contends that because Caldwell testified he did not realize he was shot until much later, his testimony "is too incredible for words." But

it seems apparent to this Court that such lack of awareness is possible in times of stress and that whether Caldwell was aware of his injury or not is completely irrelevant to the issue of appellant's guilt. Finally, we are told that Caldwell's testimony that decedent did not appear drunk contradicts Dr. Spellman's, who said that decedent was grossly intoxicated. However, the doctor made it clear that although decedent's blood indeed contained a high proportion of alcohol, the alcohol level at the brain was much lower, indicating recent heavy drinking, the effects of which might not have become apparent.

This review of appellant's main allegations of perjury demonstrates to us that appellant has failed completely in his attempt to even prove that there are contradictions and inconsistencies in the testimony of these witnesses.* But even if it is conceded, arguendo, that these were actual variations in the testimony, they certainly do not rise to the level of severity requiring a finding of perjury. It is our view that they merely go to the issue of credibility, an issue which was properly given to the jury and which they resolved against appellant.

The next assignment of error is that the trial judge erred in permitting the FBI agent to testify that he had arrested appellant seven months after the crime in Florida. The rule of law on this situation is "When a person commits a crime, knows that he is wanted therefor, and flees or conceals himself, such conduct is evidence of consciousness of guilt, and may form the basis in connection with other proof from which guilt may be inferred." *Commonwealth v. Coyle*, 415 Pa. 379,

---

* Because of our conclusion that there were no serious inconsistencies in the Commonwealth's evidence, the appellant's contention that the trial judge failed to outline the inconsistencies to the jury is rendered moot.

393, 203 A. 2d 782, 789 (1964). But appellant contends the Commonwealth failed to prove that he knew he was wanted. However, we believe the Commonwealth is correct when it suggests that circumstantial proof of such knowledge may be sufficient. In the instant case the Commonwealth showed that appellant was at the scene of the crime and that he had been living in Florida under an assumed name since the time of the incident. This was enough evidence from which a reasonable inference could be drawn that the appellant knew he was being sought; therefore, the admission of the testimony was proper.

Appellant also maintains there were several errors in the court's charge which warrant the granting of a new trial. The judge's failure to instruct the jury on the possible legal ramifications of their finding another gun present at the scene of the crime is urged as reversible error. However, without there being any evidence in the trial record to indicate the presence of this "other gun," it hardly would seem reasonable to require a charge on the issues which would be raised if the jury thought there was one. In addition, appellant complains of the judge's failure to instruct the jury on the principles of legal causation. However, this argument must fail for two reasons. First, there was no doubt presented by the trial record that the wound was fatal. Dr. Spellman testified "unless he was shot in the operating room, with a team of skilled surgeons and technicians available, . . . I doubt if this man could have been saved because of the severe nature of the wound. . . ." Second, the only two incidents which appellant raises as intervening and superseding causes—Caldwell turning over decedent and "Larry" giving mouth-to-mouth resuscitation and pushing down on decedent's chest—actually come within the category of improper treatment; and a defendant is charged

with foreseeing that death might result from such improper treatment. See *Commonwealth v. Williams*, 304 Pa. 299, 156 Atl. 86 (1931).

Finally appellant argues that the only possible verdict the jury could have returned on the evidence presented by the Commonwealth were first degree murder or voluntary manslaughter. But it is clear that the jury could have found that appellant fired his gun into a crowd of people, thereby exhibiting the depravity of heart and disregard of social duty necessary to sustain a second degree murder conviction.

Having found no merit in any of appellant's contentions, the judgment of sentence is affirmed.