380 A.2d 777

**COMMONWEALTH of Pennsylvania**

v.

**Leon Thomas GARLAND, Appellant (two cases).**

Supreme Court of Pennsylvania.

Argued Jan. 14, 1977.

Decided Dec. 1, 1977.

James D. McCrudden, Philadelphia, for appellant.

F. Emmett Fitzpatrick, Dist. Atty., Abraham J. Gafni, Deputy Dist. Atty., Steven H. Goldblatt, Asst. Dist. Atty., Chief, Appeals Div., James A. Shellenberger, Philadelphia, for appellee.

Before EAGEN, O'BRIEN, POMEROY, NIX and MANDERINO, JJ.

OPINION OF THE COURT

O'BRIEN, Justice.

Appellant, Leon Thomas Garland, was tried by a judge and jury and was convicted of murder of the first degree and conspiracy. Post-verdict motions were denied and appellant was sentenced to life imprisonment and a concurrent prison term of two and one-half to five years. This direct appeal followed.[1]

The facts of the crime are as follows. According to appellant's confession, in the early evening of August 21, 1973, he was informed that Leroy Skinner, the victim, was standing outside appellant's home in Philadelphia, flicking a knife. Appellant and his co-defendant, Tyrone Pearsall, went looking for the victim and found him standing on 24th Street near Dickerson Street. The victim ran into a bar. As appellant and Pearsall entered the bar, appellant handed a gun to Pearsall, who fired one shot at the victim. As the victim ran out of the bar, both Pearsall and appellant gave chase. Pearsall continued firing at the victim. Appellant then took the gun and fired one shot. Skinner was subsequently pronounced dead at Graduate Hospital. An autopsy revealed that the cause of death was three gunshot wounds to the trunk.

■ Appellant first argues that the trial court erred in refusing to accept his guilty plea. Trial was commenced on April 18, 1974, with appellant pleading not guilty. After five days of voir dire, a jury was empaneled on April 24, 1974. During the second day of the presentation of the Commonwealth's case, appellant informed the court that he wished to plead guilty to murder generally. A plea agreement had been worked out with the Commonwealth certifying that the degree of guilt was no higher than murder of the second degree. During the colloquy between appellant and his attorney, however, appellant denied that he was guilty of murder. The court refused to accept the proposed

1. Appellant appealed the conspiracy conviction to Superior Court, which certified that appeal to this court.

plea and ordered the jury trial to proceed. Appellant argues that this refusal was error. We do not agree.

Rule 319(a) of the Pennsylvania Rules of Criminal Procedure states:

".  .  . A defendant may plead not guilty, guilty, or, with the consent of the court, nolo contendere. *The judge may refuse to accept a plea of guilty, and shall not accept it unless he determines after inquiry of the defendant that the plea is voluntarily and understandingly tendered. Such inquiry shall appear on the record.*" (Emphasis added.)

In addition, the United States Supreme Court, in *North Carolina v. Alford*, 400 U.S. 25, 38, n. 11, 91 S.Ct. 160, 168 n. 11, 27 L.Ed.2d 162 (1970), refused to overturn a guilty plea where the defendant refused to admit guilt. The court went on, however, to state:

"Our holding does not mean that a trial judge must accept every constitutionally valid guilty plea merely because a defendant wishes so to plead. A criminal defendant does not have an absolute right under the Constitution to have his guilty plea accepted by the court, .  .  . Likewise, the States may bar their courts from accepting guilty pleas from any defendants who assert their innocence."

During the colloquy, the following transpired:

"THE COURT: Well, all I really want to know is if—I can hear the case that the Commonwealth has now. If there's something he wants to say, that's all right and I'll be glad to listen to it.

"However, I just want to know if he's pleading guilty because he is guilty, under the terms that have been arranged here. Is that why you are pleading guilty, because you are guilty?

"MR. McCURDDEN [Defense attorney]: Is that correct?

"THE DEFENDANT: No.

"THE COURT: All right. Let's go back to trial. We will go to trial, if there is any doubt about it."

As appellant refused to admit his guilt, the plea was properly rejected for two reasons.

Pa.R.Crim.P. 319 states that the court "may refuse to accept a plea of guilty . . . ." We find no abuse of discretion in the trial court's refusal, especially in light of footnote 11 of *Alford, supra,* when a defendant refuses to admit guilt.

■ Furthermore, Rule 319 mandates that the court "*shall* not accept" a plea unless it is voluntary and understanding. In *Commonwealth v. Ingram,* 455 Pa. 198, 201, 316 A.2d 77, 79 (1974), we stated, ". . . the defendant *must* understand the nature of the charges to which he is pleading." (Emphasis added). While appellant's guilt may very well be predicated upon his participation in the homicide short of actually killing the victim, he could be, and, in fact, was, found guilty of murder. While many laymen might not realize that they may be found guilty for the acts of another, we believe a defendant must demonstrate such an understanding before a court will accept a tendered guilty plea. In the instant case, appellant made no such demonstration. In the opinion of the court en banc (one judge dissenting on another ground):

". . . The entire series of questions asked of the defendant were not understood by the defendant. . ."

We have reviewed the entire record and find no reason for disturbing this finding. Appellant's contention is thus without merit.

Appellant next complains that the trial court erred in refusing to compel Tyrone Pearsall, appellant's co-defendant, to testify as a defense witness. Immediately prior to appellant's attempt to plead guilty, Pearsall pled guilty to murder generally pursuant to a plea agreement with the Commonwealth, certifying that the crime rose no higher than murder of the second degree and recommending a nine-to-twenty-year prison term. The court, however, deferred sentencing until a presentence report could be completed to assist the court in determining whether to follow

the recommendation. Appellant called Pearsall as a defense witness, but in an *in camera* hearing, Pearsall indicated he would not answer any questions, asserting his Fifth Amendment privilege against self-incrimination. Appellant nonetheless put Pearsall on the witness stand, but Pearsall refused to answer any questions. Appellant claims that Pearsall should have been compelled to testify. We do not agree.

Appellant argues that Pearsall waived his privilege against self-incrimination by pleading guilty. We believe, however, that this waiver does not go into effect until, at the very least, sentence is imposed.[2] One reason for this rule is clear from the facts of the instant case. The court had ordered a presentence report so that he could decide whether to follow the recommended sentence. The court could very well have decided that a more severe sentence was called for. Pearsall then would have been allowed to withdraw his guilty plea and demand a trial. Had Pearsall been forced to testify at appellant's trial, his testimony could have been used against him at his own trial, thus circumventing the Fifth Amendment privilege. We believe the court below acted correctly in refusing to compel Pearsall's testimony.

Following the court's refusal to compel Pearsall's testimony, appellant attempted to introduce a confession which Pearsall had given the police. This confession was almost identical to appellant's, except that Pearsall admitted firing all the shots, while appellant had admitted to firing one shot. The trial court refused to admit Pearsall's confession, and appellant claims that this refusal was error. We do not agree, as the proffered statement did not meet the test of relevancy. *Commonwealth v. Colon*, 461 Pa. 577, 337 A.2d 554 (1975).

While six shots were fired from the murder weapon, only three struck the victim. Even if appellant did fire one shot, the Commonwealth was unable to prove that bullet struck

2. See cases cited in *Commonwealth v. Rodgers*, 472 Pa. 435, at 454, 372 A.2d 771, at 780 (1977).

the decedent. It is clear, rather, that appellant's guilt was predicated upon an accomplice theory. Even if Pearsall's statement had been admitted, it would have shown that appellant and Pearsall together went looking for the victim and once they found him, appellant gave Pearsall the gun to shoot the decedent. Further, when Pearsall started chasing the victim, appellant ran along. The confession was not relevant,[3] because it did not tend to prove that appellant did not participate in the crime and was not guilty of murder of the first degree. See *Commonwealth v. Colon, supra; McCormick's Handbook of the Law of Evidence,* § 185 (2d ed. 1971).

Appellant finally complains that the court below erred when it refused to grant two motions for a mistrial. In both cases, a Commonwealth witness, Detective McGlotten, the officer who took appellant's confession, mentioned a polygraph test. Because of the circumstances of this case, however, we find no error in the court's refusal of appellant's motions for mistrial.

The first complained of instance occurred during the following exchange between defense counsel and McGlotten:

"Q. Was he kept in a room most of the time?

"A. Yes, sir.

"Q. When he left the room, was he in custody of an officer?

"A. I don't understand what you mean.

"Q. Well, what's the room number that he was in?

"A. The room number four.

"Q. 104?

"A. Yes, sir.

"Q. Room 104 is a big room, isn't it?

"A. That's right.

"Q. And it has little interview rooms?

---

**3.** The confession would have been relevant if introduced by the Commonwealth, as it would have tended to prove that appellant was a participant in a crime which amounted to murder of the first degree. Appellant, however, was attempting to establish his innocence, and from this point of view, the confession was irrelevant.

"A. Yes, sir.

"Q. Now, these interviews took place in one of those little interview rooms?

"A. That's correct.

"Q. Did he at any time leave room 104?

"A. Yes, when he went to the polygraph."

Following the denial of the first motion for mistrial, the following exchange occurred between the same two parties:

"Q. All right. So, then, when I'm questioning you, sir, I'm questioning you not only about what was said here in the statement after 1:33, but what was said during the entire—that period of time and the twenty minutes that preceded, okay?

"A. (no response)

"Q. Well, you were there.

"A. If I answer that, he was informed that he failed the polygraph machine."

In *Commonwealth v. Camm*, 443 Pa. 253, 277 A.2d 325 (1971), we held that any reference to a polygraph examination which raises an inference concerning either the guilt or innocence of a defendant is inadmissible. The first complained of remark raised no inference whatsoever and was thus not prejudicial.

In both cases, the remarks were a result of questioning by defense counsel. It had been established at the suppression hearing that during the time in question, appellant had failed the polygraph exam and defense counsel knew this. Defense counsel, thus, knew that the truthful answers to his questions would contain references to a polygraph examination. In *Commonwealth v. Kahley*, 467 Pa. 272, 356 A.2d 745 (1976), we held otherwise prejudicial remarks, when elicited by defense counsel, would not be grounds for reversal. We believe the *Kahley* principle is applicable to the instant case.

Further the trial court instructed the jury to disregard any mention of the polygraph test. In *Commonwealth v. Camm, supra*, we indicated that such instructions would not

normally cure the remarks. Where the remarks, however, were elicited by defense counsel, we believe that such instructions were in order.

Judgments of sentence affirmed.

JONES, former C. J., took no part in the consideration or decision of this case.

ROBERTS, J., took no part in the consideration or decision of this case.

MANDERINO, J., files a dissenting opinion.

NIX, J., dissents.

MANDERINO, Justice, dissenting.

I dissent. My examination of the record convinces me that the appellant was entitled to a mistrial when Officer McGlotten stated before the jury that appellant had failed a polygraph test.

This reference to a polygraph was the second made by this witness. The first, less damaging to the appellant, was to the effect that appellant has taken a polygraph test. Appellant's counsel moved for a mistrial at that time, and the trial judge denied the motion. The trial judge also refused defense counsel's request that he instruct the witness to answer questions directly. The trial judge stated, "I do not see any justification for criticizing this witness in the reply that he made." He further told defense counsel to formulate his own solution to the problem of witness statements that prejudice his client, and that "I [have] no suggestions as to what you should do"

The witness' second reference to the polygraph test was more prejudicial to the appellant, the witness stating that appellant failed the test. Counsel's motion for a mistrial was denied, notwithstanding the trial judge's admission that the answer was not a responsive one. At that point the judge cautioned the witness, and informed the jury that the witness' statement was to be disregarded, saying,

"Now, I ask the jury to erase from your minds that statement that he failed the polygraph—the defendant was informed that he failed the polygraph test and I direct that that be stricken from the record as not being a responsive answer."

I utterly fail to see how the majority can conclude that an answer was "elicited by defense counsel" when the trial judge stated that the answer was unresponsive to the question! Such a conclusion defies reason, ignores the record, and denied appellant due process of law. I dissent.