385 A.2d 1292

**COMMONWEALTH of Pennsylvania**

v.

**Jose SANABRIA, Appellant.**

Supreme Court of Pennsylvania.

Argued May 6, 1976.

Decided March 23, 1978.

24

Griest, Managan & Himes, Peter J. Mangan, York, for appellant.

Donald L. Reihart, Dist. Atty., for appellee.

Before JONES, C. J., and EAGEN, O'BRIEN, ROBERTS, POMEROY, NIX and MANDERINO, JJ.

## OPINION OF THE COURT

O'BRIEN, Justice.

Appellant, Jose Sanabria, was tried by a judge sitting with a jury and was adjudged guilty of murder of the

second degree for his participation in the murder of Elizabeth Bilger. Post-verdict motions were denied. Appellant was sentenced to life imprisonment at a state correctional institution. This appeal followed.

Appellant first argues that the evidence was insufficient to sustain a conviction of murder of the second degree. We do not agree.

In *Commonwealth v. Rose,* 463 Pa. 264, 267–68, 344 A.2d 824, 825–26 (1975), we stated the standard for appellate review:

> "The test of sufficiency of the evidence is whether, viewing the evidence in the light most favorable to the Commonwealth and drawing the proper inferences favorable to the Commonwealth, the trier of fact could reasonably have found that all of the elements of the crime had been established beyond a reasonable doubt. *Commonwealth v. Robson,* 461 Pa. 615, 625, 337 A.2d 573, 578 (1975); *Commonwealth v. Boyd,* 461 Pa. 17, 24, 334 A.2d 610, 613 (1975); *Commonwealth v. Murray,* 460 Pa. 605, 608, 334 A.2d 255, 257 (1975). Moreover, it is the province of the trier of fact to pass upon the credibility of witnesses and the weight to be accorded the evidence produced. *Commonwealth v. Robson,* supra; *Commonwealth v. Murray,* supra; *Commonwealth v. Smith,* 457 Pa. 638, 326 A.2d 60, 61 (1974); *Commonwealth v. Paquette,* 451 Pa. 250, 257, 301 A.2d 837, 841 (1973). The fact-finder is free to believe all, part, or none of the evidence. *Commonwealth v. Robson,* supra; *Commonwealth v. Smith,* supra."

Viewing the evidence in the light of the above standard, the facts of the instant case are as follows:

On the night of July 18, or the early morning of July 19, 1974, appellant, Michael Myers and Fred McCleary planned a robbery of an "old lady's home." At approximately 2:00 a.m. on July 19, 1974, appellant drove Fred McCleary and Michael Myers to the home of the decedent, Elizabeth Bilger. Appellant drove his car into the driveway of the Bilger home. Myers got out of appellant's car carrying the car's tire iron which was in the back seat. Myers went to

the back of the home. Minutes later the lights in the house went on and voices were heard. Appellant and McCleary then drove away. After driving around the area for a time, appellant drove to the general area of the victim's home and picked up Myers, who was walking down the road. On the way back to appellant's residence, Myers offered appellant a check for gas. Appellant refused the check, but McCleary took the check and then tore it up and threw it out of the car.

At 10:30 a.m. on July 19, the police found the decedent's body in the bedroom of her home. The cause of death was a fractured skull. Numerous gashes and contusions were also noted over the body. Police investigation revealed one of the two rear doors of decedent's home was open.

On the afternoon of July 19, appellant and his girlfriend, Cindy Fitzkee, left Pennsylvania for Florida. Neither appellant nor his girlfriend informed friends or family of their trip to Florida. The day after their arrival in Florida, Ms. Fitzkee called her family in Pennsylvania. At the request of appellant, Ms. Fitzkee misinformed her family as to their location in Florida. Ms. Fitzkee was informed by her family of the homicide and that a tire iron was suspected of being the murder weapon. Ms. Fitzkee testified that she conveyed this information to appellant. Upon inspecting the tire iron in the trunk of his car, appellant found grey hair on the tire iron.

A review of the above evidence in the light most favorable to the Commonwealth and all logical inferences therefrom, shows there is sufficient evidence to sustain appellant's conviction.

■ Appellant next argues that the suppression court erred in refusing to suppress his confession. The basis of appellant's contention is that because of his inability to comprehend the English language, his purported waiver of his *Miranda* rights was involuntary, unknowing and unintelligent. We do not agree.

In *Commonwealth v. Riggins,* 451 Pa. 519, 522, 304 A.2d 473, 474 (1973), we stated our scope of review in determining the correctness of a suppression court's order:

> " 'Our task on review, . . . [of a suppression hearing] is to consider only "the evidence of the prosecution's witnesses and so much of the evidence for the defense as, fairly read in the context of the record as a whole, remains uncontradicted." *Culombe v. Connecticut,* 367 U.S. [568] supra at 604, 81 S.Ct. [1860] at 1880, 6 L.Ed.2d 1037.' *Commonwealth ex rel. Butler v. Rundle,* 429 Pa. 141, 149–50, 239 A.2d 426, 430 (1968)."

See also *Commonwealth v. Kichline,* 468 Pa. 264, 280, 361 A.2d 282, 290 (1976).

Interpreting the facts in the instant case in the above light, we must then determine whether the Commonwealth has sustained its burden of proof by a preponderance of evidence that appellant's waiver of his constitutional rights was knowing, voluntary and intelligent. See *Commonwealth v. Bullard,* 465 Pa. 341, 346–49, 350 A.2d 797 (1976).

The facts surrounding appellant's confession are as follows. On July 24, 1974, appellant was arrested by Bradenton, Florida, police at the apartment where he and Cindy Fitzkee were staying. The Florida police advised appellant that he was under arrest in connection with a homicide investigation, to which he responded, "I know all about it." Appellant was placed in a police car and his *Miranda* rights were read to him. Appellant purportedly "waived" these rights. Appellant also consented to the Florida police's request to search his car for the tire iron.

Officer Delhagen of the Bradenton police testified that he had no trouble communicating with appellant in the English language. On July 26, Officers Donald Gettys and Barry Poff of the Spring Garden Township, Pennsylvania, police arrived in Bradenton, Florida, for the purpose of escorting appellant back to Pennsylvania. At 2:25 p.m. on July 26, Officers Gettys and Poff interrogated appellant in the Mantee County Jail, Bradenton. Officer Gettys testified as follows concerning this interrogation:

"Q. What advice did you give him concerning his constitutional rights?

"A. I again used the standard rights card and I *read it numerous times for him slowly with the following advice:* 'Warning concerning interrogation, the law requires that you be advised of your right to remain silent, that anything you say can and will be used against you in a court of law, that you have a right to the presence of an attorney and if you cannot afford an attorney, one will be appointed for you free of charge prior to questioning if you so desire.'

"Q. Did you give this warning to the Defendant in the English language?

"A. Yes, sir, I did.

"Q. Did he indicate to you that he understood what you were saying?

"A. Yes, sir. *I went over it four or five times to make certain that he understood and I went very slowly and he did indicate that he did understand it.*

"Q. Did he speak with you?

"A. Yes, sir, he did.

"Q. In what language did he converse with you?

"A. English.

"Q. Did he communicate effectively with you?

"A. Yes, sir. We both spoke slowly so we could understand each other." (Emphasis added.)

We are of the opinion that the Commonwealth has proved by a preponderance of the evidence that appellant's waiver of his *Miranda* rights was knowing, voluntary and intelligent. Compare *Commonwealth v. Pana,* 469 Pa. 43, 364 A.2d 895 (1976).

■ Appellant next argues that the court below erred in permitting Michael Myers, a co-defendant of appellant, to invoke the Fifth Amendment prohibition against self-incrimination.

Michael Myers, a co-defendant of appellant, pled guilty to murder generally for his involvement in the slaying of

Elizabeth Bilger. No degree of guilt hearing had yet been conducted and, therefore, judgment of sentence had not been imposed upon Myers. Appellant subpoenaed Myers and sought the testimony of Myers to support his claim that he had no prior knowledge of the homicide. An *in camera* hearing was held at which time Myers indicated that he would invoke the Fifth Amendment's protection against self-incrimination. The Trial Court sustained this right. Appellant's argument is based on a theory that once Myers pled guilty, even though not sentenced, he waived his Fifth Amendment protection. We do not agree with appellant's contention.

In *Commonwealth v. Garland,* 475 Pa. 389, 380 A.2d 777 (1977), we were confronted with the exact factual situation as presented in the instant case. We stated:

> "Appellant argues that Pearsall waived his privilege against self-incrimination by pleading guilty. We believe, however, that this waiver does not go into effect until, at the very least, sentence is imposed.[2] One reason for this rule is clear from the facts of the instant case. The court had ordered a presentence report so that he could decide whether to follow the recommended sentence. The court could very well have decided that a more severe sentence was called for. Pearsall then would have been allowed to withdraw his guilty plea and demand a trial. Had Pearsall been forced to testify at appellant's trial, his testimony could have been used against him at this own trial, thus circumventing the Fifth Amendment privilege. We believe the court below acted correctly in refusing to compel Pearsall's testimony."
>
> [2] "See cases cited in *Commonwealth v. Rodgers,* 472 Pa. 435, 372 A.2d 771, at 780 (1977).

This case is controlled by *Commonwealth v. Garland, supra.*[1]

Appellant next argues that the trial court erred in not sustaining his objection to alleged prejudicial remarks

1. Appellant in a related argument contends that the court below erred in granting the Commonwealth a broad scope of cross-examination if Myers would have testified. Having determined that Myers

made by the district attorney during his summation to the jury. We need not reach the merits of this issue, as no timely objection was made. The transcript reveals that neither closing argument was transcribed. Defense counsel did not object during the district attorney's closing, but waited until after the jury was sent out.

In *Commonwealth v. Adkins,* 468 Pa. 465, 364 A.2d 287 (1976), we stated:

> "Where the argument is not recorded, there is a need to require an objection during the argument so that the remarks may be placed in the record at or about the time they are made and thereby ensure accuracy. Otherwise, the recollection of both counsel and the court at the conclusion of the argument may differ and thereby result in unnecessary factual disputes."

See also *Commonwealth v. Perkins,* 473 Pa. 116, 133 n. 10, 373 A.2d 1076, 1084 n. 10 (1977).

This issue is not properly preserved for appellate review.

■ Appellant next argues that the court erred in his charge to the jury concerning "flight" as creating an inference of guilt. We do not agree.

In *Commonwealth v. Osborne,* 433 Pa. 297, 302, 249 A.2d 330, 333 (1969), this court stated:

> ". . . The rule of law on this situation is 'When a person commits a crime, knows that he is wanted therefor, and flees or conceals himself, such conduct is evidence of consciousness of guilt, and may form the basis in connection with other proof from which guilt may be inferred.' *Commonwealth v. Coyle,* 415 Pa. 379, 393, 203 A.2d 782, 789 (1964)."

The court, in *Osborne,* further held that:

> ". . . [w]e believe the Commonwealth is correct when it suggests that circumstantial proof of such knowledge may be sufficient. . . ."

properly exercised his right against self-incrimination, we find no merit in this contention.

See also *Commonwealth v. Faulcon,* 450 Pa. 414, 301 A.2d 375 (1973).

Our review of the testimony reveals sufficient evidence to support the propriety of giving the above charge.

There is evidence that appellant and his girlfriend, Cindy Fitzkee, fled the day of the Bilger homicide. Neither he nor Ms. Fitzkee told anyone that they were going that day or their destination. Moreover, appellant told Ms. Fitzkee to misrepresent their location in a telephone conversation with her parents. In addition, appellant, when confronted by the Florida police, responded: "I know all about it." We are of the opinion that there existed sufficient evidence to warrant a flight charge.

Appellant next argues that the court below erred in its charge to the jury by overemphasizing an element of the crime, i. e. intent. We do not agree.

The relevant portion of the charge is as follows:

". . . I am only going to review one issue, and there are [sic] more than one issue in this case. Nothing is conceded in a criminal case, every element of the offense must be proved beyond a reasonable doubt, and by referring to only one issue, I don't mean to down-grade any of the others, it's just an issue that seems to me of central importance, you may not agree with that, you may find other issues more difficult, that's, of course entirely up to you. I say that just to emphasize that if I don't refer to something that you think is important, you be governed by your own decision of what's important. If I refer to something you don't think has any great significance, then disregard it. I am certainly not attempting to invade your providence in any way, shape, or form.

"Now, subject to that, I do think a comment on one issue may be appropriate, as both counsel in their arguments to you have stressed that in their opinion that issue is central to the case, and that is the question of what was the purpose of the Defendant in taking McCleary and Myers out to the immediate vicinity of the home of Mrs.

32

Bilger, the victim in this case. Why did he do that? What was his purpose, what was his intent? How do you find out what's inside somebody's mind, what their intent was? We obviously have no way of looking in there and figuring that out, so we can do that from two different points of view, or two different ways to attempt to solve that problem. One is statements of the Defendant, if made. If a person is telling you what's on his mind, that may be considered as evidence of what his intent and purpose was. Another is by circumstantial evidence by proving or attempting to prove from all the circumstances surrounding it, what was going on, what was the motive or purpose of the Defendant. . . ."

Evaluating the charge in its entirety, *Commonwealth v. Russell,* 459 Pa. 1, 326 A.2d 303 (1974), it is clear that the trial court's discussion of the "intent" did not remove this issue from the jury consideration, but was an attempt to clarify a difficult area of the law. Moreover, the trial court, in the beginning of his charge, detailed all of the elements of the offenses which appellant could have been found guilty of and clearly instructed the jury that the Commonwealth bore the burden of proof beyond a reasonable doubt of all those elements. There is no merit to appellant's contention.

■■ Appellant next argues that the court below erred in failing to distinguish the term "flight" as it relates to the Commonwealth's accomplice theory of murder of the second degree, and "flight" as raising an inference of guilt. We do not agree. Our review of the charge in the instant case reveals that the court below articulated the difference between his use of the word "flight." The Commonwealth's theory of the case was that appellant was an accomplice in the burglary-homicide of Elizabeth Bilger. The court below, therefore, properly instructed the jury that appellant's assistance in driving his co-defendants to and from the Bilger home must be considered to determine whether appellant was an accomplice. Later in his charge, the court again properly informed the jury that appellant's trip to Florida could be considered a "flight," and, therefore, could raise an

inference of guilt. See discussion, *supra.* The court informed the jury on the differing legal significance of the term "flight." He explained that flight from the scene of the crime with the co-defendants related to appellant's role as an accomplice, as opposed to appellant's flight to Florida with Ms. Fitzkee, which allowed the jury to draw an added inference of guilt. The court below did not err.

Appellant's final argument concerned the recantation by appellant's girlfriend, Cindy Fitzkee, of her trial testimony.

In *Commonwealth v. Mosteller,* 446 Pa. 83, 89, 284 A.2d 786, 788 (1971), this court, in considering the recantation of a Commonwealth witness, stated the applicable tests:

"Our general view of recanting testimony is equally settled: 'The well-established rule is that an appellate court may not interfere with the denial or granting of a new trial where the sole ground is the alleged recantation of state witnesses unless there has been a clear abuse of discretion. *Commonwealth v. Green,* 387 Pa. 515, 128 A.2d 577 (1957); *Commonwealth v. Sholder,* 201 Pa.Super. 642, 644–645, 193 A.2d 632 (1963).

" 'Recanting testimony is exceedingly unreliable, and it is the duty of the court to deny a new trial where it is not satisfied that such testimony is true. *Commonwealth v. Scull,* 200 Pa.Super. 122, 130, 186 A.2d 854 (1962). There is no less reliable form of proof, especially when it involves an admission of perjury. *Commonwealth ex rel. Leeper v. Russell,* 199 Pa.Super. 93, 96, 184 A.2d 149 (1962), *Commonwealth v. Sholder,* supra.' *Commonwealth v. Coleman,* 438 Pa. 373, 376-77, 264 A.2d 649 at 651 (1970)."

The facts surrounding this issue are: at trial Cindy Fitzkee, appellant's girlfriend, testified that appellant had told her that he, Myers and McCleary planned to "rob a home, an old lady's house." In her post-trial recantation, Fitzkee indicated that she was unclear as to whether appellant had made the above statement. In her recantation, Fitzkee also stated that prior to trial she confirmed her inculpatory version of appellant's statement to the district attorney.

**34** 

During the trial Fitzkee was the subject of a long and intensive cross-examination by defense counsel which centered on her credibility. Fitzkee was confronted with a transcript of her testimony at appellant's preliminary hearing. The transcript revealed that she gave testimony regarding appellant's involvement in the Bilger homicide which was at variance with her trial testimony. She explained this variance by confirming her trial testimony inculpating appellant and disowning her testimony at the preliminary hearing which exculpated appellant.

 Reviewing this record, we find no abuse of discretion on the part of the trial judge in rejecting Fitzkee's recantation. As noted in *Mosteller,* the judge hearing the recanted testimony is the judge of credibility and his acceptance or rejection of the testimony will not be reversed unless there is an abuse of discretion. In this case, Fitzkee gave different accounts of appellant's actions on the night of the Bilger homicide, at the preliminary hearing, to the district attorney prior to trial, at trial and in her recanted testimony. The judge of credibility chose not to credit Fitzkee's recanted testimony and we find no abuse of discretion.

Judgment of sentence affirmed.

JONES, former C. J., took no part in the consideration or decision of this case.

MANDERINO, J., files a dissenting opinion.

MANDERINO, Justice, dissenting.

I dissent. *Commonwealth v. Pana,* 469 Pa. 43, 49, 364 A.2d 895, 898 (1976), held that the use of an interpreter is necessary during a criminal trial when it becomes evident that a witness may be unable to understand or respond to questions put to him in the English language. In so holding, we recognized that the existence of some ability to communicate in English is not dispositive because the witness may become confused due to the tenseness and unfamiliarity of the circumstances, even though he has some familiarity with English. *Id.* 469 Pa. at 50, 364 A.2d at 899.

The reasoning of *Pana* is equally applicable to a situation where an accused, unfamiliar with the English language, is confronted by interrogating police officers who attempt to communicate to him in English. As the uncontradicted evidence at the suppression hearing indicates, Spanish was appellant's native language, and that while he had been in the United States for approximately eight to nine years, only during the last two or three years had he attempted to learn the English language. Appellant's unfamiliarity with the English language is further demonstrated by the fact that the interrogating officer, as pointed out by the majority, felt it necessary to read appellant's *Miranda* rights to him "numerous times" and "slowly." The record also reveals that upon appellant's return to Pennsylvania, the prosecution provided interpreters to assist him at the preliminary hearing, at the suppression hearing, and at trial.

In my view, the prosecution has failed to meet its burden of establishing that appellant's purported waiver of *Miranda* rights was knowing, voluntary, and intelligent. I therefore dissent.