389 A.2d 1026

**COMMONWEALTH of Pennsylvania**

v.

**Ronald E. HOLLAND, Appellant.**

Supreme Court of Pennsylvania.

Argued Oct. 20, 1977.

Decided July 14, 1978.

Frank J. Marcone, Media, for appellant.

John G. Siegle, Asst. Dist. Atty., for appellee.

Before EAGEN, C. J., and O'BRIEN, ROBERTS, POMEROY, NIX, MANDERINO and PACKEL, JJ.

## OPINION OF THE COURT

O'BRIEN, Justice.

Appellant, Ronald E. Holland, was tried by a judge sitting with a jury and was convicted of voluntary manslaughter in connection with the shooting death of Michael Timchattin. Post-verdict motions were denied and appellant was sentenced to five to ten years in prison and a $250 fine. This appeal followed. The facts surrounding this homicide are as follows. Appellant and the decedent were both employees of Reynolds Metal Company. The decedent was appellant's foreman. The working relationship between appellant and the decedent was strained as a result of cross-complaints concerning labor grievances that they had filed against each other.

On September 18, 1973, appellant was in the Village Cafe West drinking. While in the bar, appellant complained about the decedent to a co-worker, Michael Mortimer. Appellant left the Village Cafe West and walked across the street to Sbandi's Bar, where the decedent had arrived approximately fifteen minutes earlier. Appellant entered the bar and confronted the decedent. A verbal exchange took place concerning the working disagreements that existed between the two. Appellant then left the bar. Within a few minutes the decedent also left Sbandi's. Within minutes, shots were heard and the decedent staggered back into the bar and collapsed.

Appellant first argues that the suppression court erred in not suppressing the identification testimony of Lloyd Bell, a Commonwealth witness. The basis for appellant's contention is that Bell's identification was tainted by an impermissible (and subsequently suppressed) uncoun-

selled physical lineup. The Commonwealth does not contest that the suppression court properly suppressed any testimony or evidence concerning Bell's identification of appellant at Chester Police Station; rather, the Commonwealth contends that the Bell identification had an independent basis. We agree that Bell's in-court identification was properly admitted into evidence.

In *Commonwealth v. Scott,* 469 Pa. 258, 365 A.2d 140 (1976), this court stated:

". . . [T]o determine if these identifications were independent of any possible improprieties, we should consider the factors set out by the United States Supreme Court:

'. . . the prior opportunity to observe the alleged criminal act, the existence of any discrepancy between any pre-lineup description and the defendant's actual description, any identification prior to lineup, of any person, the identification by picture of the defendant prior to the lineup, failure to identify the defendant on a prior occasion, and the lapse of time between the alleged act and the lineup identification.' *United States v. Wade,* 388 U.S. 218, 241, 87 S.Ct. 1926, 1940, 18 L.Ed.2d 1149 (1967). See *Commonwealth v. Wilson,* 450 Pa. 296, 301 A.2d 823 (1973)."

At the suppression hearing, Bell testified as follows:

"A. I had just finished bowling, and I stopped there to pick up my daughter, that was staying with my aunt.

"Q. You were in your car at the time?

"A. I had just gotten out of the car.

"Q. All right. When you got out of your car, would you please describe what you saw at that time.

"A. I was just about to lock the car when I heard a shot or two shots ring out. And it was so close that it startled me. And I just backed up against the car and waited, and finally two figures emerged from the alley beside the bar.

"Q. Now did both of those figures come nearer to you?

"A. Yes.

"Q. And how close did you get to them, or how close did they get to you?

"A. Well, the one person came across the back of the building and down a little, I guess about a two-foot wall there, and walked down along the side of the bar and then disappeared around the corner. The other person came up along two cars to another little paved section behind homes there and came right across the street within about three and a half, four foot of me where I was standing beside a tree at the car.

"Q. What were the lighting conditions right then and there near that tree?

"A. Fairly good. There was a street light right there at the end of that alley.

"Q. Do you recall how that person was dressed?

"A. Yes.

"Q. How was that person dressed?

"A. Blue denims, the top and bottom, white T-shirt. From the sound of it, it sounded like heavy shoes.

"Q. And you say the person got within three or four feet of you?

"A. I could have reached out and grabbed him.

"Q. Did you get a good view of his face?

"A. A profile view.

"Q. Can you describe his facial appearance?

"A. I say a profile view because as he came across the alley I noticed what I thought was a weapon still in the hands, and I had my eye on that until the figure was just about beside me, and I looked up in the face. There was long, about shoulder length, wavy dark hair, a beard, what else can I say?"

We believe the above testimony is sufficient to sustain the *Wade* criteria for independent identification. Appellant contends, however, that Bell failed to identify him at a preliminary hearing and, therefore, his identification should have been suppressed.

The facts surrounding appellant's contention are: Appellant at the time of his arrest had long hair, sideburns and a mustache and was unshaven. He was photographed by police after his arrest with the above features. However, he appeared at his preliminary hearing with short cropped hair and no mustache, beard or sideburns. At the preliminary hearing, Bell failed to positively identify appellant. At the suppression hearing, he explained that his failure to identify appellant was based on his "new" appearance. Bell positively identified two police photographs taken at the time of appellant's arrest. These photographs depicted appellant with his "old" appearance of long hair, sideburns, mustache and beard. We do not believe that Bell's failure to identify appellant at the preliminary hearing tainted his independent recollection and the suppression court did not err in determining that an independent basis existed for Bell's identification.

Appellant next argues that the court below erred in failing to conduct a suppression hearing concerning the testimony of Commonwealth witness Joseph Hinton. The Commonwealth contends that appellant has waived any objection to Hinton's testimony by failing to include his objection to Hinton's testimony in his timely suppression motion. We agree with the Commonwealth.

The facts surrounding this issue are: On January 31, 1974, appellant was indicted for murder and voluntary manslaughter by the Grand Jury of Delaware County. Among the witnesses listed on the back of the indictment was Joseph H. Hinton. Hinton was then a clerk in the Woolco Department Store firearms department in Claymont, Delaware. Hinton testified at trial that appellant purchased ammunition of the same type that was found in the decedent's body.

On June 17, 1974, appellant was brought to trial. On June 18, 1974, pursuant to a defense motion, a mistrial was granted. On August 19, 1974, appellant filed a motion to suppress. The basis of this suppression motion was an alleged uncounselled physical lineup at the Chester Police Station. In the suppression motion appellant named Gloria

Restaneo, Lloyd Bell, John Williams, Jr., and William Mola, but there was no mention of Joseph Hinton. On September 9, 1974, the court suppressed certain testimony of the above witnesses, but allowed Bell and Williams to testify because of its determination of an independent recollection as to identity.

Appellant's trial began on September 9, 1974. On September 10, during the district attorney's opening, he described what the testimony of Hinton would be and stated that Hinton had identified appellant at a photographic lineup. On September 11, defense filed a petition to suppress the photographic identification. The court held an in camera hearing to determine the basis of this supplemental petition to suppress. Defense counsel contended that the opening statement of the district attorney was his first knowledge of Hinton, of his testimony, and of the uncounselled photographic "lineup." The court below denied appellant's supplemental suppression motion as untimely filed. The court concluded that appellant had failed to undertake any pretrial discovery or investigation to ascertain the whereabouts of the witnesses listed on the bill of indictment and had not attempted to interview any of the witnesses.

During trial, Hinton testified that appellant purchased ammunition at the Woolco Store in Delaware. Hinton also identified a police photograph of appellant taken days after the arrest.[1]

On cross-examination, defense counsel elicited testimony that Hinton had been shown a series of six photographs[2] by the Chester police and that he identified appellant. On re-direct examination Hinton testified that appellant, as depicted in police photograph C–25, was the person who purchased the ammunition.

The then-applicable Pennsylvania Rule of Criminal Procedure 323(b) (1974) provided in relevant part:

1. Commonwealth Exhibit 25.

2. Defense Exhibit 1.

"(b) Unless the opportunity did not previously exist, or the interests of justice otherwise require, . . . application [to suppress] shall be made only after a case has been returned to court and not later than ten days before the beginning of the trial session in which the case is listed for trial, except that in any judicial district having continuous trial sessions said application shall be filed not later than ten days before the day the case is listed for trial. If timely application is not made hereunder, the issue of the admissibility of such evidence shall be deemed to be waived."

Under the facts of this case, we believe that the court below did not abuse its discretion in denying appellant a hearing on his supplemental suppression motion. Appellant made no attempt to ascertain the identity or whereabouts of Hinton. No pretrial motions of any form were filed by the defense until the August 19 suppression motion. We do not believe that the court below abused its discretion in denying appellant's supplemental motion to suppress as untimely filed; therefore, the issue is not properly before this court.

Moreover, defense counsel, on cross-examination, initially elicited the Hinton testimony concerning the photographic lineup. After Hinton was excused, the district attorney was permitted, over defense objection, to recall Hinton and he then elicited the testimony that Hinton had an independent recollection of the appearance of appellant as he looked on the day he purchased the ammunition. This physical identity coincided with appellant's appearance on Commonwealth Exhibit C–25, which Hinton identified on direct examination.

Appellant next argues that the trial court erred in allowing testimony concerning photographic lineup identifications. His argument is centered on whether a defendant after arrest is entitled to have his attorney present at photographic displays to potential witnesses. See *Commonwealth v. Whiting*, 439 Pa. 205, 266 A.2d 738 (1970), and compare *United States v. Ash*, 413 U.S. 300, 93 S.Ct. 2568, 37

L.Ed.2d 619 (1973). We do not decide the merits of appellant's argument. In his August 19, 1974, suppression motion, appellant did not mention any facts or legal arguments concerning uncounselled photographic lineups.

The then applicable Pa.R.Crim.P. 323(b) and (d) (1974) provided:

"(b) Unless the opportunity did not previously exist, or the interests of justice otherwise require, such application shall be made only after a case has been returned to court and not later than ten days before the beginning of the trial session in which the case is listed for trial, except that in any judicial district having continuous trial sessions said application shall be filed not later than ten days before the day the case is listed for trial. If timely application is not made hereunder, the issue of the admissibility of such evidence shall be deemed to be waived.

\* \* \* \* \* \*

"(d) The application shall state specifically the evidence sought to be suppressed, the specific constitutional grounds rendering the evidence inadmissible, and shall state with particularity the facts and events in support thereof."

Subsection (b) of the rule required that all issues dealing with violation of one's constitutional rights be raised in pretrial suppression motions unless the opportunity previously did not exist or the "interests of justice" permitted belated consideration of the issue.

Subsection (d) required specificity in articulating the constitutional ground for suppressing the evidence. See *Commonwealth v. Baylis,* 477 Pa. 472, 384 A.2d 1185 (1978). All of the facts now presented in support of the right of counsel to attend photographic lineups were available to defense counsel at the time of the suppression hearing.

■ A review of the suppression motion in this case reveals that it is specifically limited to challenging the testimony concerning a physical lineup. No mention is made of any photographic lineups or challenges thereto. There-

fore, the issue of the admissibility of testimony concerning the photographic lineup is not properly before this court. See then applicable Pa.R.Crim.P. 323(b) and (d) (1974).

Appellant next argues that the court below erred in not sequestering all of the witnesses in the case. In *Commonwealth v. Kravitz*, 400 Pa. 198, 217–19, 161 A.2d 861, 870 (1960), this court stated:

> ". . . In nearly every criminal and civil case, one side or the other would like to have some or all of the witnesses of his opponent sequestered. The lack of adequate room space, the long delays which would inevitably be caused by sequestration and other practical considerations, make sequestration of witnesses ordinarily impractical or inadvisable, except in unusual circumstances.* For the foregoing reasons the question of sequestration of witnesses is left largely to the discretion of the trial judge and his decision thereon will be reversed only for a clear abuse of discretion.
>
> " * A request for sequestration of a witness or witnesses should be specific and should be supported by some reason or reasons demonstrating that the interests of Justice require it.

> "In *Commonwealth v. Turner*, 371 Pa. 417, 429, 88 A.2d 915, the Court said: 'In Pennsylvania it has long been established that the trial judge has the power to permit sequestration of witnesses: *Commonwealth v. Principatti*, 260 Pa. 587, 104 A. 53; and that it is a matter within the discretion of the trial judge: *Commonwealth v. Sloat*, 298 Pa. 10, 147 A. 834.' "

The court in *Kravitz* determined that there was no absolute right to sequestration of *all* witnesses and further that requests for sequestration should be as specific as possible and supported by reasons aimed at the interests of justice. Appellant's request for sequestration was a general one. The proffered reason was that there could be no harm in sequestering all witnesses. Since appellant at trial did not allege specific facts necessary to require sequestration, we can find no abuse of discretion by the trial court in denying the request. See *Kravitz, supra.*

 Appellant next argues that the court below erred in failing to conduct an in camera hearing to determine whether the Commonwealth would be able to establish an adequate foundation for subsequent testimony relating to handwriting analysis. We do not agree with appellant's contention.

Three witnesses presented by the Commonwealth testified concerning handwriting exemplars and comparisons. The first witness was Harold E. Lentz, a detective with the Delaware County district attorney's office. Prior to Detective Lentz's testimony, defense counsel demanded an offer of proof. The trial court conducted a sidebar conference during which the Commonwealth stated that Lentz would testify concerning the method by which he obtained the page from the Woolco ammunition sales log which was signed by "Ronald E. Holand," and documents bearing the signature of appellant from his place of employment, the Reynolds Metal Company. The court overruled the defense objection and permitted the Commonwealth's questioning of the witness.

The next witness involved with the handwriting evidence was William P. Bishop, personnel manager of Reynolds Metal Company. Defense counsel asked for an offer of proof, and the Commonwealth stated that Bishop would authenticate the work records allegedly signed by appellant and given to Detective Lentz. The court, after a sidebar conference, permitted the testimony.

The final witness related to the handwriting evidence was Corporal Robert J. O'Neil of the Philadelphia Police Department. The defense did not request an offer of proof concerning his testimony.

Appellant argues that the court below erred in not holding an in camera hearing in the above witnesses' testimony. Our review of the record, however, reveals that in the two instances that appellant demanded offers of proof, sidebar conferences were in fact held and the Commonwealth was allowed to proceed with the evidence. We believe that the court below committed no error.

■ Appellant next argues that the court below erred in restricting the cross-examination of Commonwealth witness William Newlin. We do not agree. Newlin's testimony centered around an argument between appellant and the decedent moments prior to the shooting. Defense counsel sought to use a transcript of the testimony of Gloria Restaneo in order to impeach Newlin's testimony concerning the identity of appellant. The Restaneo testimony was given at a habeas corpus hearing involving one Lawrence Robbins, a friend of appellant. Restaneo at the habeas corpus hearing identified Robbins as the person she saw fleeing the homicide scene. Defense counsel attempted to question Newlin as to whether he knew of Restaneo's identification of Robbins as the perpetrator of the crime. The court below ruled that this area of cross-examination was irrelevant. We find no error in this ruling.

Appellant's next allegation of error is that the court below erred in limiting the scope of cross-examination of William Bishop. We do not agree. As previously stated, Bishop was the personnel manager of Reynolds Metal Company. Bishop's direct testimony centered around verifying the record-keeping system of Reynolds and his compilation of the documents containing appellant's signature for Detective Lentz to be used for comparison purposes. On cross-examination, defense counsel attempted to ascertain whether the records of Reynolds established any dispute between appellant and the decedent, and whether the decedent ever recommended that appellant be fired. After a brief re-direct by the district attorney, defense counsel on re-cross established that subsequent to the incident in this case, appellant's employment was terminated by Reynolds. Defense counsel attempted to determine why appellant was fired. The district attorney objected, saying that the issue was irrelevant and beyond the scope of direct and re-direct examination. Defense counsel at sidebar made an offer of proof that he expected to show bias on the part of Bishop, because if the defendant was acquitted, Bishop would be held responsible by Reynolds, as he recommended the termi-

nation. The trial court sustained the Commonwealth's objection.

The record, however, reveals that defense counsel subsequently was permitted to inquire into precisely this area of contention. Defense counsel was permitted to ask whether Bishop had any reason to testify against appellant. Bishop answered in the negative. Defense counsel was also permitted to inquire who recommended the suspension of appellant and for what reasons. Again, Bishop said that he recommended the suspension pursuant to a plant rule and a union agreement.

■ We do not agree that appellant was deprived of his right to ascertain possible bias on the part of Bishop. While the record indicates that counsel's initial attempts made at the sidebar conferences were rejected, his subsequent questions covered the area of bias.

In *Commonwealth v. Cheatham*, 429 Pa. 198, 202–03, 04, 239 A.2d 293, 296 (1968), this court stated:

". . . Although ordinarily cross-examination is limited to matters brought out on direct examination, it is clear that an exception exists where the cross-examiner seeks to show bias on the part of the witness. *Lenahan v. Pittston Coal Min. Co.*, 221 Pa. 626, 70 A. 884 (1908); *Commonwealth v. Farrell*, 187 Pa. 408, 41 A. 382 (1898). . . . In *Lenahan*, supra, at page 629, this court said: 'It is always the right of a party against whom a witness is called to show by cross-examination that he has an interest direct or collateral in the result of the trial . . . The right is not to be denied or abridged because incidentally facts may be developed that are irrelevant to the issue and prejudicial to the other party.' The fact that the cross-examination may also help develop the cross-examiner's own case is irrelevant where the cross-examination seeks to establish bias on the part of a witness. We are well aware that the scope or limitation of cross-examination is largely within the discretion of the trial court, and its action will not be reversed in the absence of an

abuse of such discretion. *Commonwealth v. Woods,* 366 Pa. 618, 79 A.2d 408 (1951)."

The facts of this case reveal no violation of *Cheatham.*

■ Appellant's next argument is that the court below erred in charging the jury:

". . . [I]f you find as a fact that the defendant has changed his appearance in order to avoid in Court personal identification, you may consider this to be an indication of consciousness of guilt."

The above point for charge was submitted by the Commonwealth and accepted by the court below. Under the facts of this case, we believe the court below did not err in giving the above instruction.

Identification testimony played an important part of the Commonwealth's case. The record establishes that the witnesses who testified concerning the actual shooting incident all described the assailant as having collar-length hair, a long mustache blending into a slight beard, and long sideburns. On the day of appellant's arrest, shortly after the homicide, his physical appearance matched the above characteristics. The record also establishes that at the time of the preliminary hearing appellant had cut his hair very short and removed the mustache, beard and sideburns. Appellant also appeared at trial with his new look. Further, the record is clear that while the witnesses had trouble identifying appellant with the new look, they could and did identify the police photographs, depicting him as he appeared on the day of the homicide. Moreover, on cross-examination, appellant, his sister and his brother-in-law, all agreed that it was a substantial number of years since appellant had not worn long hair, a mustache, a beard or sideburns.

In *Commonwealth v. Osborne,* 433 Pa. 297, 249 A.2d 330 (1969), this court, in discussing "flight," stated:

". . . The rule of law on this situation is 'When a person commits a crime, knows that he is wanted therefor, and flees or *conceals himself,* such conduct is evidence of consciousness of guilt, and may form the basis in connec-

tion with other proof from which guilt may be inferred.' *Commonwealth v. Coyle,* 415 Pa. 379, 393, 203 A.2d 782, 789 (1964)." See *Commonwealth v. Sanabria,* 478 Pa. 22, 385 A.2d 1292 (1978).

While *Osborne, supra,* deals with the usual flight or concealment case, i. e., leaving the jurisdiction or the area of a crime, we believe the underlying rationale of this court's flight cases is equally applicable to the factual situation where the "concealment" is by alteration of one's physical appearance for the purpose of evading identification. The charge given by the court below permits an inference of consciousness of guilt upon a finding of fact by the jury that a defendant intentionally altered his physical appearance for the purpose of avoiding identification.

The Commonwealth must, by direct or circumstantial evidence, establish that the alteration in appearance was made by a defendant who knew he was wanted for a crime and with the intention to avoid subsequent identification. In this case the evidence clearly establishes that appellant knew he was wanted for the Timchattin homicide and the evidence is also sufficient to permit an inference that the change of appearance was for deception.

Appellant next argues that the court below erred in failing to charge the jury concerning appellant's lack of motive to kill the decedent. We do not agree. Appellant submitted the following two points for charge:

"12. When the question is, did the Defendant commit the crime charged, his lack of motive may be a most important fact in the proof.

"13. If you determine from the facts, the alleged motive would not be likely to induce one with the Defendant's temperament to commit the alleged crime you must give the Defendant the benefit of the conclusions of doubt flowing therefrom. If the doubt is a reasonable doubt you must acquit the Defendant."

We do not believe that the court below erred in failing to give the above points for charge. Initially, we

point out that the court properly listed and defined for the jury all the elements of the crimes charged. Moreover, the court is not bound to give instructions which do not reflect the proper articulation of the law. *Commonwealth v. Newsome,* 462 Pa. 106, 337 A.2d 904 (1975).

The above points for charge do not correctly state the law.

 Motive, while sometimes relevant factually, is not an element of the crime charged which the Commonwealth must prove. *Commonwealth v. Novak,* 395 Pa. 199, 150 A.2d 102 (1959). If the Commonwealth presents sufficient evidence concerning the elements of the crimes charged, its failure to offer evidence of motive does not, as a matter of law, raise a reasonable doubt. The court below did not err in refusing the above points for charge.

 Appellant's final argument is that the court below erred in its charge to the jury concerning reputation evidence. We do not agree.

The court charged:

"You heard talk about reputation, reputation evidence. So, we will cover that. Evidence of good reputation presented by a defendant does not present a distinct issue in the case, but it must pervade and be considered by you in connection with all the other evidence in the case on the general issue of guilty or not guilty, and is to be regarded as a substantive fact like any other evidence tending to establish innocence.

"In some instances it may of itself work an acquital [sic] or create a reasonable doubt, but that is all a question for you under all the evidence in the case.

"When a defendant has had a good reputation, this fact must be given due weight. But, if he has been proven guilty beyond a reasonable doubt, he is not to go free simply because he has previously had a good reputation.

"In other words, you may not in arriving at a verdict exclude everything but the evidence of good reputation and decide the case solely on such evidence."

220

We find no error in the above charge. The above charge is based on *Commonwealth v. Stoner,* 265 Pa. 139, 108 A. 624 (1919). We believe that *Stoner, supra,* is of continuing validity.

Judgment of sentence affirmed.

POMEROY, J., took no part in the consideration or decision of this case.

PACKEL, J., took no part in the decision of this case.

MANDERINO, J., concurs in the result.