363 A.2d 1257

**COMMONWEALTH of Pennsylvania, Appellant,**

v.

**Samuel SLATER.**

Superior Court of Pennsylvania.

Sept. 27, 1976.

John J. Hickton, Dist. Atty., Charles W. Johns, Louis R. Paulick, Asst. Dist. Attys., Pittsburgh, for appellant.

John J. Dean, Pittsburgh, for appellee.

Before WATKINS, President Judge, and HOFFMAN, CERCONE, PRICE, VAN der VOORT, and SPAETH, JJ.

HOFFMAN, Judge:

On July 14, 1975, the lower court suppressed evidence seized pursuant to an April 11, 1975 search warrant. The Commonwealth has appealed and would have this Court create an unprecedented exception to the standards announced in *Aguilar v. Texas*, 378 U.S. 108, 84 S.Ct. 1509, 12 L.Ed.2d 723 (1964), and *Spinelli v. United States*, 393 U.S. 410, 89 S.Ct. 584, 21 L.Ed.2d 637 (1969). We decline to do so and affirm the lower court.

Appellant was indicted for several violations of the Uniform Controlled Substance, Drug, Device and Cosmetic Act.[1] The evidence against the appellee was seized pursuant to a search warrant issued on April 11, 1975, and was suppressed on July 14, 1975, following a hearing.

The sole issue is whether the facts contained in the affidavit in support of the warrant amounted to probable cause. The affidavit stated: "I, the affiant, have re-

1. 1972, April 4, P.L. 233, No. 64, § 1, et seq.; 35 P.S. § 780–101 et seq.

ceived information, in person from a confidential informant who wishes to remain anonymous but whose name, address, phone number, social security number, age, current whereabouts, and place of employment I know. Before giving any information the informant was sworn to its authenticity and accuracy and informed that giving false information to the police was an offense punishable by law and this was fully explained to him and he acknowledged that he fully understood this. This informant stated that between the dates of April 6, 1975 and April 10, 1975 he was in the above residence in the presence of [appellant] and that he did witness [appellant] in the possession of a large amount of marijuana and also a number of marijuana plants which [appellant] stated he was going to process and sell. Due to the above information, I consider this informant to be reliable. Because of the above information, I hereby request that a search warrant be issued for the above residence."

The affidavit must be tested in light of *Aguilar's* two-pronged test. That is, the issuing magistrate must be informed of the underlying circumstances from which the informant concluded that criminal activity was afoot, and the basis for the affiant's conclusion that the informant is reliable. The first prong has been met. The only issue is whether the police procedure below established the informant's reliability: "The final component of the probable cause equation, here involved, is that it must appear reasonably likely that the informer's claim that criminal conduct has occurred or is occurring is probably accurate. Our cases establish that this element is satisfied only if there is reason to believe that the informer is a truthful person generally and that he has based his particular conclusions in the matter at hand on reliable data, . . . for it is not reasonable to invade another's premises on the basis of information, even if it appears quite damning when simply taken at face value, unless there is corroboration of its trustworthiness."

*United States v. Harris*, 403 U.S. 573, 588–89, 91 S.Ct. 2075, 2084, 29 L.Ed.2d 723 (1971), (HARLAN, J., dissenting opinion).

Ordinarily, prong two is satisfied by police reliance on information supplied in the past which has led to arrests and convictions. Of course, there is always a first time. The police need not discourage a citizen who comes forward with information for the first time. But merely to accommodate the informant, the police are not exempted from testing the reliability of the information. For example, the police can test the reliability by setting up surveillance or acquiring other corroboration; see, *Spinelli*, supra. Further, the surrounding circumstances may justify reliance; for example, reliance *may* be justified if the informant's tip amounts to a declaration against his penal interest. See *United States v. Harris*, supra.

The Commonwealth suggests that we apply the *Harris* test. In the instant case, the police fully instructed the informant of possible consequences of giving false information and then placed him under oath. The informant then gave his information. We fail to see, however, how the informant's declaration was against his penal interest. Such a declaration must be an admission that the informant somehow participated in criminal activity. Here, the informant admitted only that he was present in appellee's apartment when he witnessed appellee's stash of contraband. His mere presence could not subject him to criminal liability. See, e. g., *Commonwealth v. Fortune*, 456 Pa. 365, 318 A.2d 327 (1974); *Commonwealth v. Tirpak*, 441 Pa. 534, 272 A.2d 476 (1971); *Commonwealth v. Reece*, 437 Pa. 422, 263 A.2d 463 (1970); *Commonwealth v. Garrett*, 423 Pa. 8, 222 A.2d 902 (1966). Thus, the informant's statement simply cannot be construed as a declaration against penal interest.

Because the informant's reliability was not proven by any judicially recognized means, the dissent would create

another approach; as long as informants are warned that false swearing is punishable, they are thereby reliable. However, all informants are subject to such penalties whether warned or not. Further, the course from an informant's false statements to his conviction is a long and tortuous one. Statistically, the chances of such a prosecution are almost nonexistent. Even in a situation in which the police fail to discover contraband, the accused may have discarded it in advance of police action; or the accused may not have possessed contraband, but the informant may have given the false information in good faith.

Finally, in the instant case, the police placed the informant under oath and then received his information. That is, the police arrogated the role of the neutral magistrate whose function it is to receive sworn testimony. Such a practice allows the police to validate reliability by administering the oath: that is, on the record, only the oath establishes the informant's reliability, not the detached review by the neutral magistrate. As such, the practice violates traditional notions of separation of powers. The United States Supreme Court condemned an analogous practice in *Coolidge v. New Hampshire*, 403 U.S. 443, 91 S.Ct. 2022, 29 L.Ed.2d 564 (1971). The warrant in *Coolidge* was approved by the State Attorney General, rather than by a judicial officer. The Court rejected the idea that a member of the executive, involved in criminal investigations, could properly authorize issuance of a warrant. Although one step removed from the procedure condemned in *Coolidge*, the police practice in the instant case suffers from the same infirmity.

Absent some meaningful showing that the informant was reliable, the warrant did not comport with the constitutional requirement of probable cause. Therefore, the lower court properly suppressed the contraband.

Order affirmed.

PRICE, J., files a dissenting opinion, in which VAN der VOORT, J., joins.

PRICE, Judge (dissenting).

I must respectfully dissent. The information given by the informant was adequate, under these circumstances, to supply probable cause to support the issuance of the search warrant. I would reverse the order of the lower court and permit the Commonwealth to utilize at trial the evidence obtained during the search.

The appellee was charged with various violations of the Controlled Substance, Drug, Device and Cosmetic Act.[1] The police obtained a warrant to search appellee's residence and confiscated a quantity of narcotics. The appellee challenged the sufficiency of the probable cause supporting the issuance of the warrant and the lower court ordered the evidence suppressed.

There is no doubt that the Commonwealth has a right to appeal the suppression order. *Commonwealth v. Deren*, 233 Pa.Super. 373, 337 A.2d 600 (1975). The only question here for decision is the sufficiency of the probable cause section of the affidavit.

The lower court in its opinion states that the evidence was suppressed because "the affidavit wholly failed to present any facts to establish the credibility of the anonymous informant or the reliability of his information." Such a finding is not consistent with my analysis of the affidavit and the case law delineating the requirements for adequate probable cause.

The affidavit states the following:

"I, the affiant, have received information, in person, from a confidential informant who wishes to remain anonymous but whose name, address, phone number, social security number, age, current whereabouts, and

---

1. Act of April 14, 1972, P.L. 233, No. 64, § 1 (35 P.S. § 780–101) *et seq.*

place of employment I know. Before giving any information the informant was sworn to its authenticity and accuracy and informed that giving false information to the police was an offense punishable by law and this was fully explained to him and he acknowledged that he fully understood this. This informant stated that between the dates of April 6, 1975 and April 10, 1975, he was in the above residence in the presence of Mr. Slater and that he did witness Mr. Slater in the possession of a large amount of marijuana and also a number of marijuana plants which Mr. Slater stated he was going to process and sell. Due to the above information I consider this informant to be reliable. Because of the above information I hereby request that a search warrant be issued for the above residence."

I believe the information supplied the issuing magistrate complies with the mandates of *Aguilar v. Texas*, 378 U.S. 108, 84 S.Ct. 1509, 12 L.Ed.2d 723 (1964).

In discussing the standards to be applied when ascertaining probable cause to support a search warrant, the Supreme Court of the United States said:

"In evaluating the showing of probable cause necessary to support a search warrant, against the Fourth Amendment's prohibition of unreasonable searches and seizures, we would do well to heed the sound admonition of *United States v. Ventresca*, 380 U.S. 102, 85 S.Ct. 741, 13 L.Ed.2d 684 (1965):

" '[T]he Fourth Amendment's commands, like all constitutional requirements, are practical and not abstract. If the teachings of the Court's cases are to be followed and the constitutional policy served, affidavits for search warrants, such as the one involved here, must be tested and interpreted by magistrates and courts in a commonsense and realistic fashion. They are normally drafted by nonlawyers in the midst and haste of a criminal investigation. Technical requirements of elaborate specificity once exacted under

common law pleadings have no proper place in this area. A grudging or negative attitude by reviewing courts toward warrants will tend to discourage police officers from submitting their evidence to a judicial officer before acting.' 380 U.S. at 108, 85 S.Ct. [741], at 746." *United States v. Harris,* 403 U.S. 573, 577, 91 S.Ct. 2075, 2079, 29 L.Ed.2d 723 (1971).

In other words, we must not unduly and unrealistically hamper, by over-critical examination of affidavits for search warrants, law enforcement personnel in performing their duty.

The case of *Aguilar v. Texas, supra,* enunciated the standards for determining the sufficiency of the affidavit. Briefly, the magistrate must be informed of (1) some of the underlying circumstances from which the informant concluded that criminal activity was afoot, and (2) the basis for the affiant's conclusion that the informant is reliable.

The first requirement may be met where the affidavit either sets forth the manner in which the informant obtained his information or describes the criminal activity in detail. *Commonwealth v. Samuels,* 235 Pa.Super. 192, 340 A.2d 880 (1975). In the instant case, the informant stated that he was in appellee's house and personally observed the narcotics. This satisfies the first requirement. *Cf. Commonwealth v. Samuels, supra.*

The real crux of this case is the second requirement, the establishment of the informant's reliability. Reliability is most often established through a showing of convictions which resulted from information supplied by the informer. *E. g., Commonwealth v. Williams,* 236 Pa. Super. 184, 345 A.2d 267 (1975). In addition, reliability may also be established where (1) the informant's story is corroborated by some other source; (2) the informant's statements were a declaration against interest; or (3) the defendant's reputation supports the informant's

tip. *Commonwealth v. Ambers*, 225 Pa.Super. 381, 310 A.2d 347 (1973).

In the case at bar, the informant has never before volunteered information to the police. Further, the other criteria generally used to establish reliability do not, as they are usually applied, immediately lend themselves to corroborating the information given.

However, upon a closer examination, I believe the procedures employed here supply the same safeguards insuring reliability as does a declaration against interest. A declaration against interest is an admission that the informant participated in some manner in a criminal activity. *Cf. Jones v. United States*, 362 U.S. 257, 80 S.Ct. 725, 4 L.Ed.2d 697 (1960). This admission of guilt, which could lead to criminal prosecution, is assumed to supply corroboration for the information given, and the same rationale can logically and accurately be applied to the instant situation.

The informant was fully instructed as to the possible consequences of giving false information to a police officer and acknowledged that he understood the possible criminal sanctions. He was placed under oath and then related his information. If the information given had proven false, the informant could have at least been prosecuted for violation of 18 Pa.C.S. § 4903 [2] and 18 Pa.C.S. § 4906.[3] Both offenses are misdemeanors of the second degree, punishable by up to two years imprisonment and by a fine not exceeding $5,000. Thus, the informer could have been subjected to imprisonment of four years and a $10,000 fine. Although it is true that the informant would have been liable for the same penalties even if he had not been so cautioned, the fact that he was made aware of the seriousness of his actions before he made his disclosure adds credence to his information. This

---

**2.** 18 Pa.C.S. § 4903 concerns false statements made under oath.

**3.** 18 Pa.C.S. § 4906 concerns false reports made to law enforcement authorities.

exposure to potential criminal liability is an accurate indicia evidencing reliability.

Any person who gives information to the authorities must at some point be a first-time informant. If the information cannot easily be corroborated by another source and it is not being offered by one who has been a participant, to one degree or another, in the criminal venture, the police must have some other method to insure that the information is reliable. The officers in the instant case obviously recognized a need to insure reliability and attempted to comply with the mandates of *Aguilar v. Texas, supra*. To refuse to allow the information here offered, contending it is not against penal interest, could lead to the absurd result of crediting a confessed criminal while discrediting a law abiding citizen attempting to perform his civic duty. Information from private citizens constitutes a valuable tool to be used by police officers both to solve and to prevent crime, and it should not be so readily dismissed.

The procedure followed here is sufficient to adequately insure reliability. *Cf. Commonwealth v. McKeever*, 229 Pa.Super. 35, 323 A.2d 44 (1974). I would reverse the order of the lower court suppressing the evidence and permit the Commonwealth to use this evidence at trial.

VAN der VOORT, J., joins this dissenting opinion.