405 A.2d 926

**COMMONWEALTH of Pennsylvania**

v.

**Yul Brenner HAYWARD, Appellant.**

Superior Court of Pennsylvania.

Submitted May 7, 1979.

Decided June 1, 1979.

492

John Patrick, Philadelphia, for appellant.

Robert B. Lawler, Assistant District Attorney, Chief, Appeals Div., Philadelphia, for Commonwealth, appellee.

Before CERCONE, President Judge, and ROBERTS and LIPEZ, JJ.*

PER CURIAM OPINION:

On March 25, 1977, a jury convicted appellant, Yul Brenner Hayward, of murder of the first degree, robbery and possession of an instrument of crime. After denying post verdict motions, the trial court imposed a sentence of life imprisonment on the charge of murder of the first degree, a concurrent sentence of imprisonment of 7½ to 20 years on the robbery charge and suspended sentence on the weapons offense. Appellant contends that an inculpatory statement he gave police should have been suppressed. We affirm.

 Appellant first argues that the statement was inadmissible because the police did not provide *Miranda* warnings when they began questioning him. On February 24, 1975, police discovered the body of the victim in her home. Her throat had been cut. The police found a freshly cleaned fish in the victim's refrigerator and learned from neighbors that a fish truck had come by earlier. The police located a fish truck, operated by appellant's father, matching the neighbors description. Mr. Hayward said that his son and another person had worked on the truck that day. With Mr.

---

* Justice Samuel J. Roberts of the Supreme Court of Pennsylvania and Judge Abraham H. Lipez of the Court of Common Pleas of Clinton County, Pennsylvania, are sitting by designation.

Hayward's assistance, the police located appellant, then 15 years old, called him on the telephone and asked if he would come to the police station for questioning about the killing. Appellant agreed. Several other individuals also were questioned at the police station in this matter. The police informed appellant of the object of the investigation and asked him if he knew anything about it. When, around 1 p. m., after about an hour of questioning, appellant stated that he had been in a house whose description resembled that of the victim, the police called Mr. Hayward into the room and, in his presence, informed appellant of his *Miranda* rights. The investigating detective testified at the suppression hearing that he had not demanded that appellant come to the station for questioning, that appellant was not under arrest, and that, until appellant gave information linking him to the killing, he was not a suspect. We believe that the police were not required to inform appellant of his rights when they first began questioning him. See *Commonwealth v. Feldman,* 432 Pa. 428, 248 A.2d 1 (1968) (plurality opinion) (where accused voluntarily came to police station for questioning and interrogation stopped when accused provided information indicating involvement in crime, questioning was not custodial interrogation before which police must inform subject of *Miranda* rights).

■ Appellant next argues that the statement should have been suppressed because the police did not cease their questioning when appellant's father stated that he wished to obtain counsel. When the police warned appellant of his rights, appellant stated that he understood them and did not wish to obtain counsel, and made a statement. He and his father signed a form waiving *Miranda* rights. Appellant appeared normal and alert to the investigating detective. After signing the form and consenting to undergo a polygraph examination, appellant and his father remained alone for 10 minutes. Mr. Hayward then departed to return to work.

From approximately 2 p. m. until about 4 p. m., the police administered the polygraph examination. Afterwards, the police again warned appellant of his rights, questioned him further and obtained an inculpatory statement. Around 5 p. m., the police called appellant's father and asked him to return. At the station, appellant admitted to his father that he had killed and robbed the victim. Appellant and his father talked privately for a while, after which Mr. Hayward stated that he wanted to call an attorney. He was unable to reach the attorney he called. For 20 minutes, appellant conferred with his father and a family friend. At 7:15 p. m., Mr. Hayward informed the police that appellant would give a formal statement. The police warned appellant of his *Miranda* rights for the third time and, between 7:20 and 8:30 p. m., took a written statement. Appellant and his father read and signed each page of the statement. In these circumstances, we believe appellant voluntarily waived his right to counsel, permitting the police to take the written statement. See *Commonwealth v. Nahodil,* 462 Pa. 301, 341 A.2d 91 (1975) (accused voluntarily waived right to remain silent after initially refusing to answer questions); *Commonwealth v. Hughes,* 477 Pa. 180, 383 A.2d 882 (1978) (accused, with advice of parent, voluntarily waived right to counsel).

■ Finally, appellant alleges that the police beat him to coerce a statement. The police testified that they did not beat appellant or otherwise exert any force to impel him to incriminate himself. Mr. Hayward testified that appellant bore no signs of beating. Sufficient credible evidence exists to support the finding that appellant was not coerced into giving incriminatory statements. See *Commonwealth v. Hughes,* supra.

Judgments of sentence affirmed.