418 A.2d 565

COMMONWEALTH of Pennsylvania

v.

Diane WEAVER, Appellant.

Superior Court of Pennsylvania.

Argued Oct. 25, 1979.

Filed Jan. 25, 1980.

Reargument Denied April 14, 1980.

594

Drew Salaman, Philadelphia, for appellant.

Edgar B. Bayley, Camp Hill, for appellee.

Before HOFFMAN, ROBERTS and LIPEZ, JJ.*

ROBERTS, Judge:

On February 16, 1978, a jury convicted appellant, Diane Weaver, of murder of the first degree and conspiracy. After denying post–verdict motions, the trial court sentenced appellant to concurrent terms of imprisonment for life for murder and 5 to 10 years for conspiracy. Appellant contends that (1) an inculpatory statement she gave police and introduced at trial should have been suppressed as involuntary; (2) the trial court erred in sustaining a witness' refusal to testify under the Fifth Amendment privilege against self–incrimination; (3) the trial court erred in ruling inadmissible the witness' out–of–court statement over a claim that the statement was against penal interest; and (4) the trial court erred in allowing admission of certain items of evidence. We affirm.

Appellant and Steven Barrick, a friend of appellant and her husband, Barry Weaver, conspired to kill her husband. On October 3, 1977, appellant called Barrick shortly before 3:00 A.M. and told him to come to her house while her husband was asleep. Barrick and appellant entered the bedroom and Barrick struck the victim on the head with a heavy metal flashlight. The blow only stunned the victim, who then resisted until killed. Barrick and appellant decided to tell the police that she had seen a black man kill her husband in a fight. When officers arrived, she told this story, without mentioning that Barrick had been present. Later, at a hospital to which appellant was brought for

* Justice Samuel J. Roberts of the Supreme Court of Pennsylvania is sitting by designation.

observation, she gave another statement in which she asserted that Barrick had killed the victim in self–defense when attacked without provocation. Appellant left the hospital and went home. Based on her statement, the police arrested Steven Barrick for killing the victim. Barrick agreed to give a statement if he could first talk with appellant. The police told appellant of Barrick's request and she came to the station about 10:00 P.M. After conversing privately with appellant for about half an hour, Barrick gave a statement asserting that he had killed the victim in self–defense. On October 7, a police officer brought appellant to the police station, where she gave a third statement admitting that she and Barrick had planned to kill the victim and twice tried to do so without success, that she had called him the night of the crime and told him to come over and that Barrick had then killed the victim. Subsequently, the police arrested appellant.

Appellant contends that her third, inculpatory statement was not voluntary because she was under emotional distress at the time, and the officers interrogated her even after she had indicated that she desired assistance of counsel. According to appellant, she was without food the entire day of the interrogation and the police harassed her into making the statement.

When the police brought appellant to the station, they informed her of her *Miranda* rights at length and she signed a rights form waiving her constitutional rights. During the course of the interrogation, they offered her food but she refused to eat anything. There were breaks in the questioning so appellant could spend some moments by herself. The investigating officers testified that appellant was not coerced into making the statement by mistreatment, threats or improper behavior, and was alert and spoke coherently. The suppression court determined that appellant's will was not overborne. We must respect the conclusion of the suppression court. See *Commonwealth v. Hughes*, 477 Pa. 180, 383 A.2d 882 (1978).

During the investigation, appellant consented to take a polygraph examination. From the testing, Officer Wynn told appellant that she seemed to be holding something back and he thought she was concealing something. She replied that the matter concerned Barrick, and asked, "Do you think I need an attorney?" Wynn stopped the questioning and answered that he could not advise her on this matter. He stated that she would have to make the decision, that she could have an attorney immediately if she wanted one and that he would call an attorney for her if she wished. The officer again showed appellant the rights form, told her to think the matter over for a while and left the room. When he returned 15 minutes later, he once more informed her that he could not advise her of the need for an attorney, reviewed her *Miranda* rights and reiterated that she could stop the questioning. Appellant said that she had decided to give a full account of the incident and proceeded, without a request for counsel, to give the third statement.

■ We agree with the suppression court that appellant did not request counsel and voluntarily decided to give the statement. Whenever a person who has received *Miranda* warnings announces that he wishes to exercise his rights, the police must stop all questioning. *Commonwealth v. Mercier*, 451 Pa. 211, 302 A.2d 337 (1973). Appellant however, only asked the officer whether he thought she needed counsel. This query did not reveal that appellant desired to invoke her right to assistance of counsel; to the contrary, it indicated that she had not decided whether to ask for counsel. The officer immediately stopped the investigation, informed appellant of her rights and let her make the decision. She then said that she wanted to tell the full story.

■ Appellant stresses that her decision was not voluntary because the officer told her he thought that she was concealing something, thereby pressuring her to give up her rights to silence and assistance of counsel. While the police may not coerce someone into a waiver of *Miranda* rights and may not attempt to persuade a person who has invoked his rights to retract his position, see *Commonwealth v. Nathan*, 445 Pa.

470, 285 A.2d 175 (1971), the officer here did not act improperly. He made the comment before appellant asked whether he thought she needed counsel, and, therefore, could not have been attempting to persuade her to abandon her rights. Appellant had consented to a polygraph test and the examining officer was seeking to learn the facts concerning the killing. His statement was an attempt to clarify the results he was receiving; it was not a ruse to trip appellant into confessing. In these circumstances, appellant's decision to give a statement without assistance of counsel was voluntary. See *Commonwealth v. Hughes*, supra (defendant who initially stated that he didn't know whether he wanted counsel later executed a valid waiver of right to counsel after police immediately stopped questioning, told him of his rights and allowed sufficient opportunity for him to decide); cf. *Commonwealth v. Nahodil*, 462 Pa. 301, 341 A.2d 91 (1975) (accused voluntarily waived right to remain silent after initially refusing to answer questions); *Commonwealth v. Hayward*, 266 Pa.Super. 491, 405 A.2d 926 (1979) (accused voluntarily gave statement after initially requesting aid of counsel).

Appellant argues that the trial court erred in sustaining Barrick's claim of the Fifth Amendment privilege against self-incrimination. When appellant sought to have Barrick testify, Barrick refused to answer any questions other than those eliciting his name and address, asserting that the answers might incriminate him. The court asked counsel what facts he planned to establish through Barrick's testimony. Counsel stated that he intended to question Barrick about his knowledge of the marital problems between appellant and the victim, the circumstances of his friendship with the Weavers, his relationship with appellant and his observations of appellant's psychological state and physical appearance before the killing. The court ruled that Barrick had justifiably invoked the Fifth Amendment and refused to compel him to testify. Appellant contends that the court erred because it could not properly make its determination without a hearing and because Barrick had not shown that

the answers to the questions counsel intended to propound would incriminate him.

For a court properly to deny a witness' claim of privilege under the Fifth Amendment, "it must be *perfectly clear* from a careful consideration of all the circumstances, that the witness is mistaken in the apprehension of self–incrimination and the answers demanded *cannot possibly* have such tendency." *Commonwealth v. Rolon*, 486 Pa. 573, 406 A.2d 1039 (1979) (emphasis in original), quoting *Commonwealth v. Carrera*, 424 Pa. 551, 227 A.2d 627 (1967). When called to testify, Barrick had already been arrested and charged with killing the victim. His trial was scheduled to start the week after appellant's. The Commonwealth's evidence showed that appellant and Barrick were engaged in an affair and had decided to kill appellant's husband in order to get him out of the way. Some of the evidence showing motive for the killing was the victim's mistreatment of appellant and his suspicion that appellant was involved with Barrick. Thus, the questions appellant intended to ask Barrick would have required him to testify about matters directly bearing on issues to be raised at his own trial. The trial court correctly concluded that Barrick was not clearly mistaken in believing that the answers demanded possibly could have incriminated him.

In making this determination, the court did not need to hold a separate hearing. It knew the foundation for the indictment against Barrick, had heard appellant's proposed line of questioning and was able to recognize the dangers Barrick would face in answering those questions. When a court has no basis for sustaining a claim of privilege other than the witness' assertion of the possibility of incrimination, it cannot sustain the claim without undertaking some investigation into the circumstances. *Commonwealth v. Carrera*, supra. But where the court already was aware of the circumstances underlying the claim and of the questions to be asked, no further inquiry was necessary. Compare *Commonwealth v. Sanabria*, 478 Pa. 22, 385 A.2d 1292 (1978) (claim of privilege upheld without hearing to determine

basis of claim); *Commonwealth v. Garland*, 475 Pa. 389, 380 A.2d 777 (1977) (same) with *Commonwealth v. Rolon*, supra (trial court erred in sustaining claim where it did not know the questions defendant sought to ask and was otherwise unaware of basis of assertion); *United States v. Gomez–Rojas*, 507 F.2d 1213 (5th Cir. 1975) (same).

Appellant contends that the trial court erred in excluding Barrick's out–of–court statement. Immediately after the court ruled that Barrick need not testify, appellant sought to enter the statement Barrick had given the police, asserting that it was admissible under the exception to the hearsay rule for admission against penal interest.

In his statement, Barrick admitted that he killed the victim but said that he had acted in self–defense:

"Diane called me at the trailer and asked me to come over. I asked where Barry was and she stated he was drunk and in bed sleeping. She stated they were fighting. I drove over in a friend's car and I parked in the trailer court across the road. I entered through the back gate and entered by the back door which was unlocked. I entered and she came into the kitchen from the living room. I had a black, metal flashlight, five cell, and gloves on. I always have gloves. This was around 3:00 to 3:30 a. m., no later. We were talking and I kissed her. I hadn't seen her for a while but we met at the A and P on 30 September 1977. On other occasions Barry stated that he would rearrange my face, and one day he slammed me into the wall in the living room. That day Diane O.D.'d and went to Holy Spirit Hospital.

I took my right glove off and we held hands. I thought I heard a noise and we went back the hall to see if he was still sleeping. This was about the third time we had met this way in the house. I told her any time he beat her and she wanted to see me to call and I would come over. We walked back to the kitchen, by the refrigerator. We stood there and I said, 'Hey, I know I heard something.' We walked back and entered the bedroom and all hell broke loose. Barry got out of bed and said, 'You S.O.B. what

the fuck are you doing here?' There was a blue light on. This was on Barry's side of the bed. I thought, hey, I'm not going to get out of here without getting my head bashed in. I said, 'I'm here to get things settled.' I saw Barry run to the closet and get the rifle out and I jumped at him and we began to fight. We landed on the bed and my flashlight fell to the floor. I picked it up and hit Barry on the head in front of the closet. He staggered, but didn't fall. Barry came at me and I side–stepped him and pushed him into the T.V. He came back and I hit him a second time with the flashlight and he fell to his knees by the bed. I dropped the flashlight several times, but I picked it up. He pushed me into the dresser because I fell and hit my back. I grabbed his shoulders and pushed as he tried to hit me in the stomach. Barry fell over the fan and got back up. He kept saying, 'You S.O.B.', or, 'You mother fucker.' I did lose the flashlight and I found it by the bed and I hit him one more time. I thought it was him or me, and if it was me he would kill Diane next. Barry fell face down at the end of the bed. He was gurgling lying there. I was confused. And Diane came out of the bathroom. We didn't turn the lights on and I heard the kid crying, but he didn't see anything as the door was closed to his room. I panicked and said, 'Maybe we can cover this by using the story that a partner came to get him cut of the Kuhns–Harnish job. Say a black man so I'm not a suspect.' The flashlight and clothes are buried on the other side of Holly."

▆▆▆▆ A statement is against penal interest if it offers facts admitting that the informant participated in a crime. *Commonwealth v. Haberman*, 257 Pa.Super. 127, 390 A.2d 279 (1978); *Commonwealth v. Slater*, 242 Pa.Super. 255, 363 A.2d 1257 (1976). Part of Barrick's statement was against penal interest, part was not. Some of the facts he admitted revealed participation in the killing: possession of the murder weapon, driving to appellant's home at her request and striking the victim, for example. Some of the facts negated a finding that Barrick participated in a crime: the victim's

attempt to use a rifle, Barrick's fear for appellant's safety and his acts in self defense, for example. Thus, the statement was not wholly against penal interest.** Where a defendant seeks to admit such a statement, courts have followed one of three approaches. Some exclude the entire statement, some admit the entire statement and some allow admission only of the parts against penal interest. McCormick, Handbook of the Law of Evidence, § 279 at 677 (2d ed. Cleary). In *Commonwealth v. Colon*, 461 Pa. 577, 337 A.2d 554 (1975), cert. denied, 423 U.S. 1056, 96 S.Ct. 788, 46 L.Ed.2d 645 (1976), a plurality of our Supreme Court endorsed the course favored by Dean McCormick, which allows admission of the part against penal interest while excluding the balance. We need not choose any of the approaches, because Barrick's statement was inadmissible under all of them.

The exculpatory parts of the statement were inadmissible because they were not against penal interest. It was not contrary to Barrick's penal interests to admit facts showing that he did not commit a crime, and, consequently, those parts of the statement are not trustworthy. See *Commonwealth v. Colon*, supra. The inculpatory parts of the statement were inadmissible because they were irrelevant. The Commonwealth proceeded against appellant on both murder and conspiracy charges, by which she would be

---

** Because the statement contained facts indicating that Barrick killed the victim in self–defense, the post–verdict court deemed the entire statement exculpatory and, accordingly, not against penal interest. We do not agree with this analysis. A statement is against penal interest if it admits facts revealing participation in a crime. E. g., *Commonwealth v. Haberman*, 257 Pa.Super. 127, 390 A.2d 279 (1978). One of the elements of murder is, of course, conduct which causes the victim's death. See 18 Pa.C.S.A. § 2501. Barrick's statement admitted conduct causing the victim's death. Moreover, a jury may disbelieve any part of the testimony of a witness. E. g., *Commonwealth v. Martin*, 481 Pa. 515, 393 A.2d 23 (1978). Thus, a jury could believe that part of Barrick's statement admitting participation in the victim's death and disbelieve that part justifying the killing on the basis of self–defense. The jury would then have before it evidence, supplied by Barrick, of his guilt. Barrick's admission of that evidence obviously was against his penal interest and he would have recognized the import of the admission when he made it.

guilty of murder even if Barrick alone struck and killed the victim. See *Commonwealth v. Tate*, 485 Pa. 180, 401 A.2d 353 (1979). Appellant sought to enter Barrick's admissions that he killed the victim as evidence that she was not guilty. The Commonwealth's theory of the case, however, did not depend on whether appellant had struck the victim. Thus, the inculpatory part of Barrick's statement did not make less likely the inference that she had participated in the crime. *Commonwealth v. Colon*, supra; see *Commonwealth v. Garland*, supra; *Commonwealth v. Perry*, 268 Pa.Super. 136, 407 A.2d 867 (1979); cf. *Commonwealth v. Kivlin*, 267 Pa.Super. 270, 406 A.2d 799 (1979) (court properly prohibited search for evidence which would not have contradicted Commonwealth's theory of case). Thus, the trial court properly excluded Barrick's statement in its entirety.

 Finally, appellant asserts that the trial court erred in allowing admission of the metal flashlight, some blood stained clothes and other items connected to the murder. Police found the items buried in a spot to which Barrick led them. Appellant argues that the evidence was inadmissible because the police discovered the items and tied them to the crime only through possession of Barrick's excluded statement and because it inflamed the jury. These contentions are without merit. In her statement introduced at trial, appellant admitted that Barrick, executing a plan he and she had formed, struck the victim in the head with a metal flashlight. Thus, appellant's own statement tied her to the evidence. Further, in assessing whether Barrick and appellant had conspired to kill the victim, the jurors were entitled to consider that one of the defendants had buried evidence, including blood stained clothes and a metal flashlight resembling the one described in appellant's statement. See *Commonwealth v. Colon*, supra; McCormick, supra § 185 at 436–438. The jurors were unaware that Barrick had made a statement or that he had assisted the police in recovering or identifying the evidence. Thus, the admitted items had probative value outweighing any potential for

prejudice and were linked to appellant only by other properly admitted evidence.

Judgment of sentence affirmed.