## Commonwealth v. Elfahel

*Henry S. Perkin, Assistant District Attorney, William H. Platt, District Attorney,* for Commonwealth.
*William A. Heitczman,* for defendant.

BACKENSTOE, *J.,* September 18, 1981—This matter is before us for disposition of defendant's post verdict motions in arrest of judgment and for a new trial. After a trial before a jury, at which the Honorable Donald E. Wieand presided, defendant was acquitted of six of the seven counts against him and found guilty of the misdemeanor of tampering with witnesses and informants.[1]

In support of his motion for a new trial, defendant argues that his pre-trial suppression motions re-

---

1. Defendant was charged with four counts of tampering with witnesses and informants, Crimes Code, 18 Pa.C.S.A. §4907(a)(1)-(4), [repealed December 4, 1980, P.L. 1097, sec. 2] one of hindering apprehension or prosecution, 18 Pa.C.S.A. §5105(a)(1), one of terroristic threats, 18 Pa.C.S.A. §2706, and one of criminal conspiracy, 18 Pa.S.C.A. §903(a)(1)-(2).

garding electronic and video surveillance were improperly denied, as was his motion to sever the charges against him. The Honorable James N. Diefenderfer ruled on those motions in a comprehensive and well-reasoned opinion filed July 7, 1980. Because we agree with the conclusions reached therein, as well as the rationale employed, we hereby adopt the relevant portions of that opinion as the opinion of the court en banc.

Defendant also argues that the court erred in failing to dismiss the charges against defendant for violation of Pa.R.Crim.P. 1100. The Commonwealth timely filed a petition to extend the time for trial, alleging due diligence on its part in attempting to bring the matter to trial and asserting that delay was unavoidable because its key witness, Tony Letayf, had left the jurisdiction and returned to his native Lebanon. Letayf was himself arrested and charged with crimes related to those in the within prosecution. He agreed to testify on behalf of the Commonwealth and aided in certain electronic surveillance that was conducted. While on bail, and without the knowledge of the State Police or other representatives of the Commonwealth, he went to Lebanon and could not be brought back involuntarily. Consequently, the Commonwealth made several telephone calls and wrote a letter to Letayf, attempting to induce him to return.

The defense argues that Letayf was an agent of the Commonwealth and was under its control. Thus, the Commonwealth was not duly diligent because it allowed Letayf to flee the jurisdiction. In the alternative, it is agrued that the Commonwealth should not be permitted to benefit from the illegal act of its agent in fleeing the country.

Defendant's characterization of Letayf as a Commonwealth agent is inaccurate. He was a cru-

cial witness in the instant prosecution, but did not thereby become an agent of the Commonwealth, in the sense that in certain circumstances a prosecuting police officer may be. Thus, his illegality cannot be imputed to the Commonwealth. Further, the testimony at the extension hearing revealed that Letayf left the country without the knowledge of the Commonwealth, which in no way permitted or condoned his flight. Once his disappearance was discovered, reasonable efforts were taken to secure his return. Trial of defendant required the presence of Letayf, and the Commonwealth was diligent in seeking his attendance. An extension pursuant to Pa.R.Crim.P. 1100(c), was thus properly granted.[2]

Defendant next asserts that reference made to a polygraph test by Tony Letayf, the Commonwealth's witness, on direct examination should have resulted in a mistrial. The relevant testimony was as follows:

"Q. (Assistant District Attorney) Did they request that you do anything with regard to further meetings with Mr. Elfahel?

A. (Letayf) Yes, they told me to—the next meeting, I give them a call, you know, right—to inform them right away.

Q. (Assistant District Attorney) And did the police do anything with regard to the next meeting?

A. (Letayf) Yes. They say—they took a polygraph test on me.

---

2. There is clear precedent for granting an extension of time for commencement of trial where a witness is not available, as, for example, where a witness is ill or hospitalized: Com. v. Brown, 252 Pa. Superior Ct. 365, 381, A. 2d 961 (1977); Com. v. Lane, 245 Pa. Superior Ct. 146, 369 A. 2d 335 (1976).

Mr. Heitczman: Objection.

The Court: The objection is sustained."

Defense counsel moved for a mistrial, which was refused. No further reference to a polygraph test was made and no indication of the results of the test was given.

"The rule in Pennsylvania is that reference to a lie detector test or the result thereof which raises inferences concerning the guilt or innocence of a defendant is inadmissible." Com. v. Camm, 443 Pa. 253, 269, 277 A. 2d 325, 333 (1971). Accord, Com. v. Garland, 475 Pa. 389, 380 A. 2d 777 (1977); Com. v. Kemp, 270 Pa. Superior Ct. 7, 410 A. 2d 870 (1979). In none of these cases, however, is the isolated reference to a polygraph test grounds for a mistrial. Only where the prosecution, through its witness, directly asserts that the test was passed or failed is there deemed an inference concerning the guilt or innocence of defendant such as to require a mistrial. Indeed, in Com. v. Kemp, supra, the Superior Court states that in that case the express assertion that the witness had passed the test prejudiced the appellant, not the statement that a lie detector test had been taken. Accordingly, the trial judge correctly refused to grant a mistrial.

Defendant next argues that a new trial should be awarded because the trial judge incorrectly failed to sustain a demurrer to Criminal Information No. 1157 of 1979, which contained a charge of conspiracy to sell hashish. The defense presented evidence on the charge and the jury ultimately returned a verdict of acquittal. Defendant argues that due process is violated any time a demurrer is incorrectly denied because giving the jury an additional offense to consider encourages compromise rather than fair consideration of the crimes properly charged.

Defendant's arguments on this issue are not persuasive. There was evidence from which the jury could conclude that a conspiracy had been formed.[3] Thus, denial of the demurrer was appropriate. Defendant asks us to speculate that the jury's verdict of guilt on one count in this case was a result of compromise, which compromise was weighted unfairly against him because of the conspiracy charge. First of all, the conspiracy charge did not weigh unfairly against defendant because it was properly before the jury. Second, there is no way of knowing if, in fact, the jury reached a compromise verdict or, if it did, whether the compromise favored or disfavored defendant. In short, defendant's argument is without substance and cannot form the basis of a new trial.

Defendant's remaining arguments are without merit. Error was not committed by the trial judge in refusing to admit into evidence defense exhibit 3, which was a letter from Corporal Marinetti to Tony Letayf attempting to induce him to return from Lebanon to testify at defendant's trial. Marinetti offered to pay his expenses back from Lebanon and, in fact, did pay approximately $950 for that purpose. Defense counsel questioned Marinetti about the contents of the letter, and, since the information was thus in evidence, the trial judge refused to admit the letter itself. He did not abuse his discretion in this regard.

Finally, defendant's points for charge 35 and 41 were adequately and accurately covered by the court's charge. Hence, error was not committed by not charging those points verbatim.

---

3. Tony Letayf testified that defendant introduced him to Jason Ammar for the purpose of delivering hashish from John Assad to Ammar. He also testified that defendant asked him for $2,500 out of the $60,000 which was paid for the hashish.

## ORDER

Now, September 18, 1981, for the reasons stated in the accompanying opinion defendant's motion in arrest of judgment and for a new trial are denied.