J-S80017-16

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|
| Appellant | |
| v. | |
| APRIL DEMANCHE | |
| Appellee | No. 5 MDA 2016 |

Appeal from the PCRA Order Dated November 30, 2015
In the Court of Common Pleas of York County
Criminal Division at No: CP-67-CR-0005999-2014

BEFORE: LAZARUS, STABILE, and RANSOM, JJ.

MEMORANDUM BY STABILE, J.:                **FILED DECEMBER 30, 2016**

The Commonwealth appeals from the November 30, 2015 order entered in the Court of Common Pleas of York County ("PCRA court"), which permitted Appellee April Demanche to withdraw her plea of *nolo contendere* and proceed to trial based on a recantation claim pursuant to the Post Conviction Relief Act ("PCRA"), 42 Pa.C.S.A §§ 9541-46. Upon careful review, we affirm.

The facts and procedural history underlying this case are undisputed. Briefly, on April 23, 2015, Appellee pled no contest to two counts of endangering the welfare of children under 18 Pa.C.S.A. § 4304(a)(1) and was sentenced to consecutive five-year terms of probation. On August 21, 2015, Appellee filed the instant PCRA petition, alleging that, between July 5, 2015, and July 15, 2015, she discovered that two minor victims had

recanted their allegations of abuse against Appellee.[1] The PCRA court conducted a hearing, after which it granted Appellee PCRA relief based on after-discovered recantation evidence on November 30, 2015.[2] The Commonwealth timely appealed to this Court. Following the Commonwealth's filing of a Pa.R.A.P. 1925(b) statement of errors complained of on appeal, the trial court issued a Pa.R.A.P. 1925(a) opinion.

On appeal,[3] the Commonwealth raises three issues for our review:

_____

[1] Generally, a defendant who pleads guilty waives all defects and defenses except those concerning the jurisdiction of the court, the legality of the sentence, and the validity of the guilty plea. **See Commonwealth v. Pantalion**, 957 A.2d 1267, 1271 (Pa. Super. 2008). A *nolo contendere* plea is treated the same as a guilty plea. **Commonwealth v. Leidig**, 850 A.2d 743, 745 (Pa. Super. 2004), **aff'd**, 956 A.2d 399 (Pa. 2008).

[2] In **Commonwealth v. Starr**, 301 A.2d 592 (Pa. 1973), our Supreme Court determined that a court should allow the withdrawal of a guilty plea after sentencing to correct a manifest injustice to the defendant. Subsequently, the Court determined that any after-discovered evidence which would justify a new trial would also satisfy the requirements of **Starr**. **Commonwealth v. Peoples**, 319 A.2d 679, 681 (Pa. 1974). Specifically, the Court stated that "any after-discovered evidence which would justify a new trial would also entitle a defendant to withdraw his guilty plea." **Id**.

[3] We have explained:

> This Court examines PCRA appeals in the light most favorable to the prevailing party at the PCRA level. Our review is limited to the findings of the PCRA court and the evidence of record[.] Additionally, [w]e grant great deference to the factual findings of the PCRA court and will not disturb those findings unless they have no support in the record. In this respect, we will not disturb a PCRA court's ruling if it is supported by evidence of record and is free of legal error. However, we afford no deference to its legal conclusions. [W]here the petitioner raises questions of law, our standard of review is *de novo* and our scope of review is plenary.

*(Footnote Continued Next Page)*

I. Whether [Appellee] is ineligible for relief under the PCRA under Section 42 Pa.C.S.A. § 9543(a)(2)(iv) as the purported victim recantations could have been discovered by going to trial and examining the victims at trial?[4]

II. Whether the lower court erred in granting [Appellee's] PCRA petition to withdraw a no-contest **Alford** plea,[5] based upon purported recantations of two of four juvenile victims?

III. Whether [the] PCRA court erred in permitting [Appellee] to withdraw her no-contest plea where the plea consisted of two counts involving a consolidated claim of four victims where only two victims recanted?

Commonwealth's Brief at 4 (unnecessary capitalization omitted).

After careful review of the record and the relevant case law, we conclude that the PCRA court accurately and thoroughly addressed the merits of the Commonwealth's claims. **See** PCRA Court Rule 1925(a) Opinion, 4/5/16, at 7-19. Accordingly, we affirm the PCRA court's November

---

*(Footnote Continued)*

**Commonwealth v. Henkel**, 90 A.3d 16, 20 (Pa. Super .2014) (citations and quotation marks omitted), **appeal denied**, 101 A.3d 785 (Pa. 2014).

[4] To obtain relief based upon newly-discovered evidence under the PCRA, a petitioner must establish that: (1) the evidence has been discovered after trial and it could not have been obtained at or prior to trial through reasonable diligence; (2) the evidence is not cumulative; (3) it is not being used solely to impeach credibility; and (4) it would likely compel a different verdict. **Commonwealth. v. D'Amato**, 856 A.2d 806, 823 (Pa. 2004) (citation and quotation marks omitted). In fact, the PCRA provides relief where a petitioner can prove "[t]he unavailability at the time of trial of exculpatory evidence that has subsequently become available and would have changed the outcome of the trial if it had been introduced." 42 Pa.C.S.A. § 9543(a)(2)(vi).

[5] **North Carolina v. Alford**, 400 U.S. 25 (1970). An **Alford** plea is a *nolo contendere* plea in which the defendant does not admit guilt but waives his trial and voluntarily, knowingly, and understandingly consents to the imposition of punishment by the trial court. **Alford**, 400 U.S. at 37.

30, 2015 order. We further direct that a copy of the PCRA court's April 5, 2016 Rule 1925(a) opinion be attached to any future filings in this case.

Order affirmed.

Judgment Entered.

_____
Joseph D. Seletyn, Esq.
Prothonotary

Date: 12/30/2016

# IN THE COURT OF COMMON PLEAS OF YORK COUNTY, PENNSYLVANIA
## CRIMINAL DIVISION

| | |
|---|---|
| **COMMONWEALTH**<br>    **Appellant** | : |
| **v.** | :   **NO. CP-67-CR-0005999-2014** |
| **APRIL DEMANCHE,**<br>    **Defendant/Appellee** | : |

COUNSEL OF RECORD:

James E. Zamkotowicz, Esquire          Anthony J. Tambourino, Esquire
Counsel for the Appellant               Counsel for the Appellee

## OPINION IN SUPPORT OF ORDER PURSUANT TO RULE 1925(a) OF THE RULES OF APPELLATE PROCEDURE

The Court received a Notice of Appeal, docketed on December 30, 2015, that the

Commonwealth of Pennsylvania appeals to the Superior Court of Pennsylvania the Order

entered in this case on November 30, 2015. Having considered all evidence, testimony, and

relevant case law, the Court now issues this Opinion in support of our November 30, 2015

Order.

## I.    Procedural History

By the filing of an Information on September 29, 2014, the Appellee was charged

with Criminal Solicitation to Involuntary Deviate Sexual Intercourse—Less Than 13 Years

of Age, four counts of Unlawful Restraint, four counts of Endangering Welfare of Children,

and Corruption of Minors. Thereafter, the Appellee completed a Waiver of Arraignment on

October 17, 2014. On February 12, 2015, the case was listed for trial in the March of 2015

trial term. Believing the Commonwealth possessed sufficient evidence to convince a jury of her guilt, the Appellee entered an <u>Alford</u> plea on May 8, 2015 to two added counts of Endangering Welfare of Children under 18 Pa.C.S.A. § 4304(a)(1). The Appellee was then sentenced to consecutive terms of five years of probation on each count with the opportunity to close the case after five years of compliance.

On October 27, 2015, a Post-Conviction Relief Act Hearing was held to consider Appellee's petition for a new trial based upon the recantations of key witnesses. Having reserved our decision, we issued an Order, on November 30, 2015, granting the Appellee a new trial based upon the credible renunciations of the two eldest victims' testimony.

The Commonwealth filed a Notice of Appeal on December 30, 2015. On January 4, 2016, we ordered the Appellant to file a statement of matters complained of pursuant to Rule 1925(b), of the Pennsylvania Rules of Appellate Procedure. On January 11, 2016, the Appellant complied and filed their Statement of Matters Complained of on Appeal Pursuant to Pennsylvania Rules of Appellate Procedure 1925(b).

The Appellant appeals for the following reasons. First, the Appellant avers that we erred in granting the Appellant's petition to withdraw her no-contest <u>Alford</u> plea following the recantations of the two eldest child victims. Second, the Appellant believes we erred in granting relief because the recantations could have been discovered by examination of the victims at trial. Third, and finally, the Appellant avers that the Appellee's pleas to the two counts of Endangering the Welfare of Children involved consolidated claims involving four

2

victims and only two of the four victims recanted.

## II.     Facts

At the October 27, 2015 PCRA Hearing, the eldest child accuser, Se███████, took the stand to recant his accusations. Se██████was born January 24, 2004. (Notes of Testimony, 10/27/15, at 10.) Without objection, Se██████was found to be competent. *Id.*, at 15.

Se██████testified that the Appellee was his brother B███████'s girlfriend and the family's babysitter. *Id.*, at 16. As to the accusations, Se██████stated that he had lied to the Children's Advocacy Center (hereinafter: CAC) interviewer. *Id.*, at 17. Specifically, Se██████told this Court that he lied about the Appellee tying him and his siblings up and that the Appellee never forced the supposed victim So██████'s face near Se██████'s privates. *Id.*, at 17-18. The impetus for Se██████to lie was that he did not like how the Appellee had treated B██████in throwing a ring at B██████in Florida. *Id.*, at 19. Se██████stated that he had only recently revealed the truth and that the Appellee never hurt him or his siblings. *Id.*

On cross-examination, Se██████stated that punishment from the Appellee consisted of calling the children's mother and that spanking was not utilized. *Id.*, at 21. Se██████ testified that he was never harmed by touching a heater in a house. *Id.* Se██████ further testified that nothing ever happened to him involving his father's drop cloths. *Id.*, at 22. And while Se██████said that he never told the siblings anything about being tied up, on redirect, Se██████ testified that his siblings told him that the Appellee tied them up during the course

3

of a game. *Id.*, at 24-25.

Se████ admitted that he told his younger brother Sp███ to go along with the accusations. *Id.*, at 26. Under questioning by the Court, Se████ said that he never told any of his siblings besides Sp███ to lie. *Id.*, at 28. Se████ also stated that not one bit of the story told to his parents, the police, or the CAC interviewer was true. *Id.*, at 30. Se████ confessed to his father that he had lied about the Appellee around the time that he lied about unrelated accusations of abuse. *Id.*, at 30-31. Finally, during re-cross examination, Se████ stated his belief that he and his brother Sp███ concocted the story about So███'s head being shoved into Se████'s privates together. *Id.*, at 33.

Following Se████'s recantation, Sp█████ took the stand. Sp███ was born September 22, 2005. *Id.*, at 35. No objection having been made, Sp███ was found to be competent to testify. *Id.*, at 40.

Sp███ told this Court that some of what he had stated in his CAC interview was untrue. *Id.*, at 40-41. He then went on to testify that he lied about the Appellee holding a knife to the children's throats and about the Appellee tying them up. *Id.*, at 42. Rather, Sp███ stated that the Appellee played games such as "cops and robbers" with the children and would tie them up with baby wipes. *Id.* Sp███ went on to say that this behavior was playful and not mean. *Id.*, at 42-43. Sp███ was clear that the Appellee never hurt the children. *Id.*, at 43. It was then proffered by Sp███ that the reason he had lied was because Se████ told him to and that he had threatened Sp███ with violence if he did not go along

4

with the lie. *Id.* Se████████ told Sp█████ to make up a bunch of stuff. *Id.*

On cross-examination, Sp█████ stated that when tied up (seemingly during the aforementioned "cops and robbers" game) he was able to move around and that he was not tied to anything. *Id.*, at 45. Like Se██████, Sp█████ testified that the Appellee punished the children with time-outs and through calling their parents. *Id.*, at 46. Sp█████ said that the Appellee did not spank anyone, nor did she put anyone's face near anyone else's privates. *Id.*, at 46. Also on cross-examination, Sp█████ revealed that Se██████ told him to accuse the Appellee of holding a knife to the children's throats. *Id.*, at 49. Under questioning by the Court, Sp█████ disagreed with Se██████ in that Sp█████ stated that it was Se██████ who told Sp█████ to say something about private areas rather than it being a jointly-crafted story. *Id.*, at 52.

Sp█████ also testified that the first time he had told the truth about this situation was to lawyers. *Id.*, at 53. Sp█████ then reiterated that he made up the story against the Appellee because he did not want to get hurt by Se██████ who threatened him. *Id.*, at 55. He then went on to say that Se██████ has hurt him in the past. *Id.*, at 56.

The next PCRA Hearing witness was R██████ S██████ who is the father of the accusers. Mr. S█████ stated that Se██████ Sp█████, Sa█████ and So█████ made the allegations and that So█████ and Sa█████ would have been three at the time. *Id.*, at 60. Mr. S█████ then testified that at some point after the Appellee had entered her plea, under questioning from Mr. S█████ about the accusations, Se██████ broke down and admitted that the accusations

5

were a lie. *Id.*, at 62-64. From the time of the incident in Florida, the victims' family, with the exception of B██████ had no contact with the Appellee. *Id.*, at 64 and 66-67.

Mr. S████ then testified that prior to Se█████'s revelation that he had falsely accused the Appellee, Se██████ had made allegations of physical abuse at the hands of faculty at Se█████'s school, which were found to be false. *Id.*, at 65. Se██████ also falsely accused his grandmother of abuse. *Id.* Further, while hospitalized, Se█████ claimed to have had sexual relations with another patient, which turned out to be false. *Id.* Mr. S████ stated his belief that Se██████ is knowledgeable about sexual behavior. *Id.*

The putative victims' father testified that he was floored by the initial accusations against the Appellee because, during the Appellee's time as the family's babysitter, the house was tidy, the children were cared for, and the children made no complaints. *Id.*, at 68. The accusations of abuse only surfaced some five-to-six months after the incident between B█████ and the Appellee that occurred in Florida. *Id.*, at 66-67.

During the course of his testimony, Mr. S████ confirmed Sp█████'s accusation that Se█████ had been physically abusive towards Sp█████ in the past. *Id.*, at 68. Finally, Mr. S█████ told this Court that the two female victims will not discuss their allegations even at the prompting of counselors. *Id.*, at 71.

The purported victims' mother, K█████ S█████, testified that the only victims who made accusations to her were Se██████ and Sp█████. *Id.*, at 73. In addition to the false allegations recounted by Mr. S█████, K█████ added that Se█████ has accused K█████ of abuse

6

as well. *Id.*, at 73. K████ stated that *all* of Se████'s allegations against others besides the Appellee were deemed unfounded and that surveillance video had definitively disproved Se████'s hospital and school-related accusations. *Id.*, at 74. Finally, K████ testified that, following the conflagration between B████ and the Appellee in Florida, Se████ "hated" the Appellee. *Id.*, at 75.

The final PCRA witness was the Appellee who stated that she really had not played games with the children. *Id.*, at 81. Moreover, the kids did not play with baby wipes or paint rags. *Id.*, at 81-82. The Appellee testified that she plead *nolo contendere* because she was worried how a jury would view the children's accusations and because she was looking at serious time in a state correctional facility followed by registration as a sex offender. *Id.*, at 82. Despite her claim of innocence, the Appellee told this Court that she entered a plea because she was afraid to go to trial. *Id.*, at 83.

## III. Matters Complained of on Appeal

### A. Recantation of Victims S.S. and S.S.

The Appellant's first two matters complained of are that we erred in granting the Appellee's petition to withdraw her Alford plea and that the Appellee was ineligible for PCRA relief because she could have garnered the eldest victims' recantations by testing their testimony at trial. These two matters are most expeditiously addressed as one and so, in the interest of judicial economy, we do so.

The Appellee's petition made application for relief via the Post-Conviction Relief Act

7

(hereinafter: PCRA) and its thrust is based upon the recantation of the accusations made by the two eldest child victims. "To be eligible for PCRA relief, the burden rests upon the PCRA petitioner to establish by a preponderance of the evidence that his sentence resulted from one or more of the enumerated errors or defects listed in 42 Pa.C.S.A. § 9543(a)(2)." *Commonwealth v. Gajewski*, 2014 WL 10979820, 2 (Pa. Super. Ct. 2014) (quoting *Commonwealth v. Crawley*, 663 A.2d 676, 678 (Pa. 1995)).[1]

Specifically, in the case *sub judice*, the Appellee sought relief under 42 Pa.C.S.A. § 9543(a)(2)(vi), which states, in relevant part:

> (a) **General rule.**—To be eligible for relief under this subchapter, the petitioner must plead and prove by a preponderance of the evidence all of the following:
>
> . . .
>
> (2) That the conviction or sentence resulted from one or more of the following:
>
> . . .
>
> (vi) The unavailability at the time of trial of exculpatory evidence that has subsequently become available and would have changed the outcome of the trial if it had been introduced.

See *Gajewski*, *supra*, at 2. Though the Appellee's sentence resulted from a plea of guilty rather than as a result of trial, "'[a]ny after-discovered evidence which would justify a new

---

1 We are cognizant that our reliance upon an unreported Superior Court decision does not place us on the firmest of footings; however, our review of relevant case law leads us to believe that a PCRA petition to withdraw a plea based upon after-discovered evidence is an atypical event. Moreover, Commonwealth also cited this case at the PCRA Hearing. (Notes of Testimony, 10/27/15, at 4.)

8

trial would also entitle defendant to withdraw his guilty plea.'" *Id.* (quoting *Commonwealth v. Peoples*, 319 A.2d 679, 681 (Pa. 1974)).[2]

Believing that the Appellee's petition was properly before us, we turn to the mechanics of dispensing with such a PCRA petition. In *Commonwealth v. Gajewski*, the Superior Court states that,

> "[t]o obtain relief based upon newly-discovered evidence under the PCRA, a petitioner must establish that: (1) the evidence has been discovered after trial and it could not have been obtained at or prior to trial through reasonable diligence; (2) the evidence is not cumulative; (3) it is not being used solely to impeach credibility; and (4) it would likely compel a different verdict."

*Id.* (quoting *Commonwealth v. D'Amato*, 856 A.2d 806, 823 (Pa. 2004)); See also *Commonwealth v. Johnson*, 966 A.2d 523, 541 (Pa. 2009) and *Commonwealth v. Williams*, 732 A.2d 1167, 1180 (Pa. 1999). In performing our analysis, we bear in mind that "[r]ecantation testimony is considered extremely unreliable" and that we should deny requests for a new trial unless we are satisfied that the recantation is true. *Commonwealth v. Nelson*, 398 A.2d 636, 637 (Pa. 1979) (citing *Commonwealth v. Coleman*, 264 A.2d 649, 651 (Pa. 1970)). However, "[i]t is up to the trial court to judge the credibility of the recantation." *Id.* (citing *Commonwealth v. Sanabria*, 385 A.2d 1292, 1298 (Pa. 1978)).

The first bar the Appellee needed to overcome was a showing that the proffered evidence was discovered after her plea and that it could not have been discovered

---

2 As a result of this precept, we believe we can reference cases that follow more common fact patterns that are distinguishable from our own by virtue of their having gone to trial. In fact, the ever useful Standard Pennsylvania Practice discusses the topic of recantation exclusively through the lens of cases that were resolved through trial. 27 Standard Pennsylvania Practice 2d § 135:450 After-discovered evidence—Recantation.

9

prior to or at the time of trial. None of the accusations in this case have been put to the test. It is true that this is because of the Appellee's decision to enter an <u>Alford</u> plea; however, the Appellee was facing the accusations of *four* child victims who were accusing her of crimes so heinous that, in similar cases, we must always summon enlarged jury panels to accommodate the number of jurors who are disqualified because of their inability to hear evidence of crimes against children. Nonetheless, the Commonwealth opines that the Appellee could have obtained the recantations through trial. We believe this is inapposite to the procession of this case.

When the Superior Court in *Grajewski*, *supra*, indicates that any after-discovered evidence that would justify a new trial will justify the withdraw of a guilty plea, we believe they were considering the plea as a stand-in for the trial. As such, Appellant is seeking to require the impossible. If Commonwealth were to be correct in their contention then no plea could be overturned by after-discovered evidence as the defendant would have never tested the witnesses at trial. Rather, the only sensible conclusion is that we must consider that which was known to the Appellee at the time of her plea. As Appellee had no contact with the victim's family, she was in no position to garner any recantations of the accusations. And as for due diligence of counsel, we fail to see how, with the procedural history of this case, defense counsel could have been expected to probe for a recantation prior to trial. We encountered no evidence that might or should have triggered counsel to try and communicate with minor victims who are unable to consent to being interviewed by defense counsel sans

10

parental permission. Absent some scintilla of evidence that the victims might recant, the defense would have been engaging in a fishing expedition. Essentially, this case is different from those we encountered in our review of the case law because it did not go to trial.

In *Commonwealth v. Smith*, the Supreme Court of Pennsylvania found that an after-discovered evidence claim failed because the witness proffering the evidence admitted in an affidavit that, had counsel interviewed her prior to trial, the truth would have been explained. 17 A.2d 873, 887 (Pa. 2011). Again, neither counsel, nor the Appellee, had any notion that any of the victims would recant and the victims did not do so prior to the entry of Appellee's plea.

In *Commonwealth v. Wilson*, it was found that the appellant had not shown that he could not have obtained the after-discovered evidence at, or prior to, the conclusion of trial because direct and cross-examination covered topics relevant to the after-discovered evidence at the time of trial. 649 A.2d 435, 448 (Pa. 1994). Here, there was no opportunity for cross-examination of the victims. Rather, the Appellee and her counsel were provided with copies of Children's Advocacy Center interviews, which, by their nature, are produced without the input or participation of the defendant.

The evidence was discovered after the Appellee's Alford plea. As discussed above, we do not believe it could have been obtained at or prior to trial through reasonable diligence. We remember that the Appellee's burden here was preponderance of the evidence, which is oft-defined as fifty percent plus one. See 42 Pa.C.S.A. § 9543(a)(2)(vi). The

11

Appellee cleared the first PCRA hurdle. We therefore believe that the Commonwealth's second matter complained of is without merit and so we humbly seek affirmance on this point of contention. As the Commonwealth's first matter complained of avers that we erred generally in our granting of the Appellee's petition, we continue on with our analysis.

The second obstacle for the Appellee was that the after-discovered evidence could not be merely cumulative. As the recantations were first aired at the PCRA Hearing and they flew in the face of the evidence offered up to and at the time of Appellee's plea, we did not find them cumulative.

The third thing that the Appellee needed to show to succeed in her petition was that the recantations were not being used solely to impeach credibility. Here it is clear that the recantations would be substantive evidence of what may have occurred when the children were in Appellee's care *and* to impeach the credibility of the younger siblings whose accusations form the basis of Commonwealth's third matter complained of, which is discussed *infra*. As the evidence was not offered solely to impeach credibility, the Appellee surmounted the third potential impediment to her being granted relief.

Fourth, and finally, the Appellee needed to show that the after-discovered evidence would likely compel a different verdict. The initial accusations were brought by children. Yet, those accusations are due no less consideration than those of adults. Se█████ and Sp█████ formed half of the witnesses to the events that the Commonwealth alleged were crimes and to which Appellee plead. For half of the accusers to recant is a tremendous blow

12

to a successful prosecution that is compounded because Se███ and Sp███'s recantations call into question the verity of the stories of the remaining witnesses. This is similar to the circumstance in *Commonwealth v. Medina*, wherein the recantation of one witness so severely undercut that of a witness known to have credibility issues that it led the Superior Court to agree with the trial court that there was a strong likelihood of a jury reaching a different verdict. 92 A.3d 1210, 1219-20 (Pa. Super. Ct. 2014). Both Se███ and Sp███ testified that the Appellee never harmed any of the children. Much like the incredible witness in *Medina*, Sa███ and So███ were so young at the time of the events in question that it is likely a jury would find the recantations overpowering.[3] As such, there is a distinct possibility that the recantations would compel a different verdict.

Up to this point, we have referred to Se███ and Sp███'s recantations as credible without stating why we found them more compelling than their CAC interviews. We turn next to those interviews.

During his CAC interview, Se███ stated that an example of a lie would be that, "[he] got hit by [Appellee]." (Children's Advocacy Center Interview, 7/3/14, at 9:51:20.) Then, in contradiction to his own statement, after the interviewer asks if Appellee had ever hit him, Se███ answers in the affirmative. *Id.* Next, Se███ recounted how he and his siblings were tied up on two separate occasions with his father's paint rags. *Id.*, at 9:52:40. Se███ told the interviewer that the children were tied up to a radiator, *Id.*, at 9:55:05, and

---

3 We note that copies of Sa███ and So███'s Children's Advocacy Center interviews were not made available to the Court. Therefore, we could not make determinations about their credibility.

13

that, as a result, he was burned, *Id.*, at 9:53:00.

Se[redacted] has an older brother, Sk[redacted] (Children's Advocacy Center Interview, 7/22/14, at 9:44:35.) Inexplicably, Sk[redacted] was allowed to play video games or nap during this ordeal. (CAC Interview, 7/3/14, at 9:53:00.) Under these facts, it strains credulity beyond that breaking point that an older child was unaware or uncaring regarding the plight of his siblings. Se[redacted] went on to describe how, during this incident, the Appellee proceeded downstairs after tying up the children and allowed a man to enter the home, which Se[redacted] knew to be the case because he heard a man's voice. *Id.*, at 9:59:30. This stands in stark contrast to Se[redacted]'s claim, minutes later, following the prompting of the interviewer about seeing the man, that he saw the man through a window. *Id.*, at 10:02:50. Se[redacted] perhaps realizing that he was supposed to have been chained to a radiator at the time, then hastened to add that the window was closer than he had drawn on a diagram and he was able to see the man enter the home. *Id.* If Se[redacted] had seen the man then he would not have stated he knew a man entered the house based upon his voice. The lie is self-evident.

Se[redacted] has a younger brother named [redacted] (CAC Interview, 7/22/14, at 9:45:15.) During the first incident of being tied up, [redacted] is alleged by Se[redacted] to have been locked in his room. (CAC Interview, 7/3/14, at 9:54:40.) Se[redacted] went on to tell the CAC interviewer that his mother and father saw red marks on [redacted]'s face and that they thought this was the result of heat. *Id.*, at 10:03:05. Se[redacted] then stated that [redacted]'s reddened face was not caused by heat; but, rather, by the Appellee smacking him, which

14

Se▮▮▮knew to be the case because, though chained to a radiator on the third floor, Se▮▮▮ heard ▮▮▮ cry. *Id.* Se▮▮▮ could not have observed what, if anything, the Appellee might have done to redden ▮▮▮'s face.

Additionally, during the first incident in which the Appellee is alleged to have bound the children, Se▮▮▮ stated that the children passed the time agreeing to tell their mother and father about the abuse. *Id.*, at 10:05:50 Yet, the children did not tell their parents of the abuse at the first opportunity. We are to believe that a cohort of children, mainly under the age of ten, maintained their silence about abuse at the hands of their caretaker for months. We will not say this is impossible, but we found it to be another instance of implausibility in Se▮▮▮'s tale.

Se▮▮▮ then told the CAC interviewer about a second incident in which he and his siblings were supposed to have been tied up by the Appellee. *Id.*, at 10:06:10. Se▮▮▮, Sp▮▮▮ and Sa▮▮ are alleged to have been tied up again. *Id.*, at 10:07:40. Sa▮ and Sk▮ were, according to Se▮▮▮ playing videogames whilst ▮▮▮ was, again, in his room. *Id.*, at 10:07:40. Se▮▮▮ alleges the Appellee again invited the man from the first incident over again and then the Appellee and the man engaged in inappropriate action based upon the rocking Se▮▮▮ says he could overhear. *Id.*, at 10:06:55. The man makes no appearance in Sp▮▮▮'s CAC interview. Such an obvious detail is telling in its absence. We did not find Se▮▮▮ credible at all in his story of the Appellee bringing a random man into the home on two separate incidents in which some of the children were tied up. Of course, three children

15

were free during the second alleged incident yet they did not liberate their siblings who were held captive. We are incredulous that the children who were not bound would have been mollified by videogames and accepting of a man entering the home for inappropriate liasons.

Se▮▮▮ told the CAC interviewer that during the second incident, the Appellee grabbed So▮▮'s head and placed it near his privates and told So▮ to "do it." *Id.*, at 10:08:20. Sp▮▮ was supposed to have been present and watching this. *Id.* Se▮▮▮ stated that his pants were down. *Id.*, at 10:09:20. This stands in contrast to Sp▮▮'s CAC interview in which he stated that both Se▮▮▮ and So▮ were wearing clothes during this specific part of the second incident. (CAC Interview, 7/22/14, at 10:07:30.)

In Sp▮▮'s CAC interviews, he stated that the Appellee used to put him in time out and hit him. *Id.*, at 9:56:50. Questioned about this, Sp▮▮ said that the Appellee smacked him on the hands and nowhere else. *Id.*, at 9:58:50. Further, Sp▮▮ stated that the Appellee only ever hit his siblings on their hands or butts and nowhere else. *Id.*, at 10:01:50. Once into the meat of the story, in contrast to Se▮▮▮, Sp▮▮ added that the children were bound with baby wipes and paint rags. *Id.*, at 10:04:20. Sp▮▮ also added that the children were bound in the kitchen in addition to the third floor. *Id.* We did not find Sp▮▮'s CAC interview credible when he diverged so greatly from Se▮▮▮ on a detail as important as location. Granted, Sp▮▮ agreed that the children were bound on the third floor; however, he added the kitchen, which never surfaced in Se▮▮▮'s account. As Sp▮▮ alleges that the children were bound in the kitchen on the first day, *Id.*, at 10:05:10, our doubts about his

16

and Se████'s stories increased. Se████ clearly stated that he viewed a man enter the home from the third floor during the first incident. We could cite more inconsistencies that led us to believe that Se████ and Sp████'s CAC interviews were not credible; however, we believe the point has been made.

It is undeniable that there were some consistencies amongst the inconsistencies of Se████ and Sp████'s CAC interviews. Yet, we are cognizant of the fact that some nineteen days elapsed between the interviews during which Se████ could apprise Sp████ of what was to be expected of him. Again, during his credible recantation, Sp████ informed the Court that he lied in his CAC interview because Se████ had threatened to harm him if he did not. Mr. S████ confirmed that Se████ has been violent towards Sp████.

In *Grajewski*, cited *supra*, the PCRA court actually found the supposed recantation to *confirm* rather than undercut or dispel the allegations. 2014 WL 10979820, 2 (Pa. Super. Ct. 2014). Here, we were convinced that the recantations were credible. Unlike the unsworn accusations in the CAC videos, which we found to be contradictory, Se████ and Sp████'s recantations were consistent in the main and were convincing to this Court.

The Appellee having met all of the requirements for relief under the newly-discovered evidence portion of the Post-Conviction Relief Act, relief was granted. We do not believe we erred in granting the Appellee's petition for PCRA relief and we respectfully request affirmance as to Commonwealth's first matter complained of.

17

B. Remaining Accusers

The Appellant's third matter complained of is that the Appellee plead guilty to two counts of Endangering the Welfare of Children and that each count involved a consolidated claim involving four victims. Therefore, the Appellant avers, we erred in allowing the Appellee to withdraw her plea and reinstating her trial rights when only two of the four victims recanted.

The amended information added two counts of Endangering Welfare of Children (hereinafter: EWOC). (Transcript of Testimony, 5/8/15, at 2.) The Commonwealth stated to this Court that these charges addressed *two* children. *Id.* We queried, "[s]o there's [sic] two children?" And the Commonwealth replied: "Correct." *Id.* The Commonwealth then went on to state that there was to be no contact with the *victims* and listed four; however, we see no specificity in the transcript as to which victims are addressed by the *two* distinct EWOC charges. If it is the Commonwealth's contention that the two counts of EWOC address consolidated charges for four victims each then we are left to wonder why the Commonwealth responded that the counts plead to addressed two children. It is certainly not memorialized in the amended information. We believe it was contemplated that the Appellee plead to charges addressing but two victims. Yet, we admit, it is confusing to attempt to parse so brief a portion of transcript and four victims' names were recounted, so we move on to our analysis.

It is true that two of the purported victims did not testify at the PCRA Hearing;

18

however, the two supposed victims who did testify called into question the allegations of *all* of the victims through convincing recantations that necessarily lead to a finding that the youngest victims may have lied as well. Ultimately, this would be for a jury to decide. When two of the four children state that none of the children were tied up or abused by the Appellee, one wonders if, perhaps unwittingly, but nevertheless, the Commonwealth proffered evidence that amounts to lies. In light of recantations that call into question the truth of Sa███ and So████'s accusations, to refuse to revisit the issue would be to cast aside the most fundamental notions of justice. We therefore pray for affirmance as to this matter complained of.

IV. **Conclusion**

Based upon the reasons stated above, this Court respectfully urges affirmance of the Order entered in this case on November 30, 2015.

**BY THE COURT,**

DATED: April 7, 2016

MICHAEL E. BORTNER, JUDGE

19